# GORDON v. WENTWORTH.

PATENTS; INTERFERENCE; ABANDONED EXPERIMENT; CONCEALMENT.

1. Where a machine for beating out shoe uppers, after being tested for a day at a shoe factory, was sent to a training school of a machinery company conducted by the assignee of the invention, where it was used for several weeks to beat out heel seats on shoes, and then thrown aside and not used for about three years, during which time a machine was experimented with designed to accomplish substantially the same results, and all the time a machine of the kind was urgently needed, it was *held* that what was done by the inventor and his assignee was in the nature of an abandoned experiment, and, in an interference proceeding, a later inventor was held entitled to an award of priority.

2. Concealment and suppression of an invention by a senior party to an interference for a period of more than two years, during which time the junior party made the same invention and put the machine embodying it on the market, is sufficient to defeat the right of the senior party to an award of priority. (Following *Matthes* v. *Burt*, 24 App. D. C. 265.)

No. 442.   Patent Appeals.   Submitted March 10, 1908.   Decided March 31, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Alfred H. Hildreth, Mr. Elmer P. Howe,* and *Mr. Benjamin Phillips* for the appellant.

*Messrs. Wood & Wood* and *Mr. A. V. Cushman* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal [by William Gordon] from the decision of the Commissioner of Patents in an interference proceeding involving the priority of the invention of a machine for beating out shoe uppers. Both parties are applicants upon an invention which the tribunals of the Patent Office have all held embodied the invention in issue. Appellee, Samuel J. Wentworth, is the senior party. His application was filed in the Patent Office on December 8, 1904. Appellant's application was filed on March 23, 1905. The issue upon which the appeal is based is as follows:

"1. A machine for beating out shoe uppers, having, in combination, two series of rotating beaters arranged to act simultaneously upon the lower edge of a shoe upper at opposite sides of the shoe and beat out the lower edge of the upper upon the insole, and means for actuating said beaters, substantially as described.

"2. A machine for beating out shoe uppers, having, in combination, two series of rotating beaters acting simultaneously to beat out the lower edge of a shoe upper upon the insole at opposite sides of the shoe, and to draw the upper over the edge of the insole towards the medial line of the insole, and means for actuating said beaters.

"3. A machine for beating out shoe uppers, having, in combination, two series of rotating beaters acting simultaneously

to beat out the lower edge of a shoe upper upon the insole at opposite sides of the shoe and arranged to exert a wiping action on the upper from the edge of the sole towards the medial line of the sole, and means for actuating said beaters."

Appellant alleges conception of his invention on April 1, 1901, and reduction to practice on August 8, 1902. Appellee fixes the date of conception of his invention at April, 1904, and reduction to practice November 2, 1904. It appears that only one Gordon machine was ever built. It was constructed in 1902. After it was tested on some dummy shoes, it was sent to a factory at Brockton, Massachusetts, where it was tested on regular work for one-half day. It was returned to appellant, and, in April, 1903, was sent to what is known as the Lynn school, where operators are trained by the United Shoe Machinery Company. Here it was left for several weeks, where it was used, as the evidence discloses, to beat out heel seats on shoes that went through the factory.

It appears that the United Shoe Machinery Company was the assignee of appellant's invention, and that, after the Brocton test in August, 1902, this company seemed to have lost interest in the machine. They were making tests, as the evidence discloses, of another machine, which had been devised by one of their employees named McFeeley. It appears that a number of the McFeeley machines were manufactured and put on the market. After the Lynn test, no further effort was made by appellant, or his assignee, to perfect his invention, or to put it into general use, or protect his right by applying for a patent. His machine seems to have been discarded until after appellee made application for letters patent on his invention. What the evidence shows to have been done by appellant and his assignee, the United Shoe Machinery Company, was more in the nature of an experiment, than of any well-defined intention to apply within a reasonable time for a patent, or to put the machine into general commercial use.

As to appellee's machine, there is no dispute as to his dates. The record clearly discloses that he put his machine into immediate and general use. A large number of the

machines were sold and used in the vicinity of Cincinnati, Ohio. He promptly applied for a patent. He is here with no laches to account for, the prior applicant, and, we think, entitled to priority over appellant for the invention in controversy.

With this state of facts before us, we fully agree with the conclusion of the Commissioner of Patents, in which he stated: "It is rather remarkable that the utility of the Gordon machine was demonstrated after half a day's use, while to show the utility of a similar device it required the building of several machines and their trial for more than a year. Moreover, it seems improbable that a machine whose successful operation had been satisfactorily demonstrated should be thrown aside for about three years in order to experiment with a machine designed to accomplish substantially the same results, when all the time a machine of that character was urgently in demand. The explanation given for the delay in placing appellant's device on the market, or in filing an application, is regarded as of no substantial merit. The conduct of the inventor and his assignee is alone sufficient to warrant the conclusion that the Gordon machine was only an abandoned experiment. But, aside from this consideration, it is believed that the testimony fails to overcome the burden imposed upon appellant of proving that the Gordon machine constituted in law a reduction to practice."

Assuming, however, that the tests made by appellant constituted a legal reduction of the invention to practice, the mere fact alone that the invention was concealed and suppressed for a period of more than two years, during which time appellee invented his machine and put it upon the market, is sufficient, in our opinion, to defeat the right of appellant to priority over appellee. This court, in *Matthes* v. *Burt,* 24 App. D. C. 265, a case similar to the one before us, said: "Having, then, completed the invention and satisfied himself of its utility, as claimed, Matthes deliberately concealed it, suppressing its use and withholding it from the public. How long he might have pursued this policy, with no rival in the field, is, of

course, conjectural; but it is certain that he showed no substantial intention of change of policy until he had obtained definite knowledge of Burt's exploitation of the same invention. On the other hand, Burt having no knowledge of Matthes's discovery, and encouraged and induced by the apparently unoccupied field, went diligently to work to perfect his invention and to put its product upon the market. He not only sold this product to the trade in large quantities, but promptly applied for a patent. On this state of facts, the Commissioner held that Matthes's right had become subordinate to that of Burt, who was the first to invent in accordance with 'the true policy and ends of the patent laws,' as declared by the Supreme Court of the United States in *Kendall* v. *Winsor*, 21 How. 322, 327, 328, 16 L. ed. 165, 167, 168."

Viewing this case from any standpoint, we are of the opinion that the conclusions reached by the tribunals of the Patent Office are correct, and the decision of the Commissioner of Patents should be affirmed.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings, as required by law.                              *Affirmed.*