## BROGDEN et al. v. HENRY.

Patent Appeal No. 3272.

Court of Customs and Patent Appeals.
April 16, 1934.

Steward & McKay, of New York City (Roy F. Steward and Clarence O. McKay, both of New York City, of counsel), for appellants.

Seth Thomas, of Fort Dodge, Iowa, C. W. Boyle, P. D. Cronin, and J. P. Wenchel and J. F. Mothershead, Dept. of Justice, Associate, both of Washington, D. C. (Irvin G. Menikheim, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Appellants have here appealed from the decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences, awarding priority of invention in the subject-matter of the four counts involved to appellee, Henry. Broadly speaking, the invention in issue relates to the removal from fruits and vege-

tables of the residual poisons adhering thereto which result from spraying the tree or plant during the growing season with such fungicides or insecticides as arsenical compounds, which are toxic to human beings.

The four counts involved are as follows:

"1. In the preparation for market of apples, pears, or other fresh fruit carrying a surface deposit of an arsenical compound, the process which comprises removing such deposit from the fruit by applying thereto a solution comprising a free alkali and then treating said fruit to remove free alkali therefrom.

"2. A process for the removal of residual poisons from fruits and vegetables comprising the subjection of such articles to a dilute solution of an alkali.

"3. A process for the removal of residual poisons from fruits and vegetables comprising the subjection of such articles to a dilute solution of an alkali, then removing the alkali by washing such articles in water, and subsequently freeing such articles from moisture.

"4. A process for the removal of residual poisons from fruits and vegetables comprising the alternate subjection of such articles to a dilute solution of an alkali and dilute solution of an acid."

Brogden and Trowbridge constitute jointly the senior party, having filed their application on May 6, 1927. Henry's earlier application was filed May 14, 1927, and his divisional application was filed May 19, 1928. Counts 2 and 3 are from the second application of Henry. Count 4 is from the earlier application of Henry. Count 1 originated in the application of Brogden and Trowbridge, and was copied into Henry's second application.

Appellee, Henry, is an employee of the United States Department of Agriculture, and his application was filed under the law applicable to such employees.

The Board of Appeals affirmed the award of the Examiner of Interferences of priority to Henry, stating that Henry had proven conception of the subject-matter of counts 2 and 4 as early as April 9 to 14, 1925, and that he had reduced the same to practice at least as early as April 22, 1925. It will be noticed that these counts relate to the removal of residual poisons from fruits and vegetables in the manner described in the counts. Nothing is contained in these counts about the "preparation for market."

Count 1 relates to "preparation for market of apples, pears, or other fresh fruit [etc.]." Count 3 contains the steps of using a dilute solution of an alkali to remove the residual poisons, removing the alkali by washing and subsequently removing the moisture.

The Examiner of Interferences said:

"Even assuming that a successful reduction to practice by Henry has not been established as of the above date [referring to counts 1 and 3] there is corroboration of the successful commercial utilization of the process of counts 1, 2, and 3 in August, 1926."

In another part of his decision, referring to Henry's activities, he also said:

"* * * It is therefore believed that the testimony of Rowe and Brinton establishes commercial utilization of the process [of counts 1 and 3] as of February, 1926."

These dates, according to the findings of the Examiner of Interferences, were prior to any date for reduction to practice allowed to appellants. It was, therefore, concluded by the Examiner of Interferences that, if he was in error with reference to the complete reduction to practice, by Henry, of the invention of counts 1 and 3 on December 16, 1925, that Henry, nevertheless, had reduced the invention to practice before appellants, and that, therefore, Henry, being the first to conceive and the first to reduce to practice, is entitled to an award of priority.

Concerning the finding by the Examiner of Interferences that Henry had successfully reduced to practice the subject-matter of counts 1 and 3, by commercially utilizing the process before the reduction to practice by appellants, the Board said:

"* * * Lee's stipulated testimony clearly establishes the fact that apples were treated in the early part of the year 1926 with a dilute solution of ammonia followed by washing and drying. He also testifies that the residual poisons were removed and that the apples so treated were marketable. When testifying on behalf of appellants, he qualifies his stipulated statement to the extent that the apples were discolored by the treatment and were marketed at a much reduced price.

"As stated at the beginning of our opinion, we do not find in the counts, nor do we think it necessary to read into them, a limitation that the treatment shall be such as will not in any way deleteriously affect the appearance or keeping qualities of the fruit. Obviously it might be better to market the fruit promptly or in a somewhat defective condition than to not market it at all."

The Examiner of Interferences gave Henry the date for conception of count 1 of October 29, 1925, and as to count 3, December 8, 1925, and a reduction to practice for counts 1 and 3 of not later than December 16, 1925. The Board held that Henry had reduced the subject-matter of counts 1 and 3 to practice in November and December, 1925.

The earliest dates for conception of any of the counts alleged in the preliminary statement of Brogden and Trowbridge is "in or about December, 1925"; the first written description was made in January, 1926; disclosure and reduction to practice in the same month. As to count 4, they conceived the invention in the fall of 1926 and reduced it to practice by filing the application on May 6, 1927. Concerning certain activities of Henry and also concerning the proof in behalf of Brogden and Trowbridge, the Board made the following observation:

"We do not consider it necessary to discuss these activities in detail as we are satisfied that Henry actually reduced the process of all the counts to practice prior to any date alleged on behalf of Brogden and Trowbridge. Such being our view we deem it unnecessary to consider the testimony presented on behalf of Brogden and Trowbridge."

In this case there is no contention that either party cannot make the counts. The counts read on both disclosures. The question is one of priority of invention and it is found by the Board that Henry had completely reduced his invention to practice before any date of conception alleged by Brogden and Trowbridge. We are inclined to agree with this view taken by the Board, but certainly it is true, in view of our conclusions hereinafter expressed, that Henry was the first to conceive and the first to reduce to practice the invention of all of the counts and is therefore to be regarded as the first inventor.

The proof shows that the early activities of Henry in removing residual spray poisons related to the poison on celery from Florida. Some time prior to Henry's activities in April, 1925, the English government had complained about the amount of arsenic found on apples produced in this country, and established a tolerance limit of only one one-hundredth of a grain of arsenic trioxide per pound of apples. This situation made the problem of how to determine the amount of arsenic on fruits and vegetables and how to remove it an acute one and the federal government, as well as the state governments, became interested in its solution. As early as April 8, 1925, the Eastern District of the Bureau of Chemistry of the United States Department of Agriculture at New York had directed that analysis for residual poisons such as arsenic be made on celery shipments from Florida. Appellee, Henry, was in charge of the laboratory at Philadelphia and it devolved upon him to make the analysis. As early as April 9, 1925, he discovered the alkali or acid method of removing residue poison from vegetable material. This was performed by dissolving the arsenic residue by washing the celery in dilute solutions of sulphuric acid and dilute solutions of an alkali. On August 20, 1925, Henry made the said analysis and applied the same process to eleven samples of fruits and vegetables purchased on the Philadelphia wholesale market. The samples contained apples and grapes which had a dangerous amount of arsenic remaining as a residue from spraying. The arsenic was removed by the process indicated and the amount of arsenic determined. On October 29, 1925, Henry disclosed to Dr. P. B. Dunbar, Assistant Chief of the Bureau of Chemistry of the United States Department of Agriculture, in Washington, D. C., the process of washing apples with an acid or an alkali solution for removing the spray residue followed by rinsing with water and drying with a current of air, and on November 16, 1925, in the Philadelphia laboratory, S. C. Rowe worked under appellee, Henry, applying the formula of washing with a dilute solution of alkali and washing with a dilute solution of acid. In November, a bushel of apples was treated by Henry as above indicated and was kept on a laboratory bench for a period of about two weeks for an observation of their keeping qualities. At the end of the period it was noted that the apples were fit for sale and consumption. On August 26, 1925, Henry submitted a report to the Chief, Eastern Division, wherein he recommended warning growers and consumers of the advisability of thoroughly washing all fruits and vegetables in order to remove spray residue or possibly bacterial infections therefrom. On December 14, 1925, the station at Philadelphia, under the direction of Henry, made tests, involving the process here under consideration, on apples, which tests were reported on December 16, 1925. These tests are relied upon to show a reduction to practice of counts 1 and 3.

The Examiner of Interferences noted the fact that Brogden and Trowbridge's earliest conception of the subject-matter of any of the counts was on January 20, 1926, and that they had reduced the same to practice by October

of that year. The appellants claim that they reduced the process of the counts to practice in January, 1926, and that the process went into commercial production on a large scale in October, 1926. The record shows that prior to their becoming interested in the process they had been interested in manufacturing and selling the Brogden machine for cleaning the residual spray from apples but which did not involve the process at bar and did not sufficiently remove the poison within the tolerances allowed.

It is contended by appellants here that the record does not show that Henry conceived or reduced to practice the subject-matter of any of the counts prior to appellants' dates of conception and reduction to practice for the reason that in none of his experiments or that in none of the acts relied upon for conception and reduction to practice was the idea of preparation for market under consideration. It is argued that many of the experiments and facts relied upon by Henry tending to establish conception or reduction to practice only related to a determination of the quantity of poison on the fruit and that there was no conception of the idea of how to remove such poison so as to make the fruit suitable for sale.

On this phase of the case the Board said:
"The procedure last outlined, like that which was followed in April, had for its purpose the determination of the amount of arsenic present rather than the removal of arsenic or other poisonous compounds to reduce the poison content sufficiently to make the fruit marketable. However, having recognized and determined that the alkaline treatment involved, followed by washing, constituted a suitable method for removing poisonous spraying residues for one purpose, it seems rather obvious that the concept of removing such residues for the purpose of making the fruit marketable would logically occur to one having either an active or passive interest in the marketing of sprayed fruit."

We agree with the conclusion of the Board in this regard.

■ The appellants also contend that even if the conception dates allowed by the Patent Office tribunals are granted, the fact that Henry waited from that time until May 14, 1927 (eight days after the date of appellants' application), before filing his application, would indicate that what Henry really did amounted to nothing more than an abandoned experiment. It is further argued by appellants that there is evidence in the record showing that Henry was spurred into activity

to file his application for a patent by the activities of the appellants, and that the record shows that Henry suppressed, or concealed his invention, and that the doctrine of forfeiture of the right to a patent under Mason v. Hepburn, 13 App. D. C. 86, applies. Concerning this feature of the case, the Board said:

"Appellants contend that even if the process were reduced to practice by Henry prior to his entry into the field, Henry has forfeited his right to a patent because of long delay in filing amounting to suppression and concealment. Appellants further attempt to show that Henry was spurred into activity by a knowledge of the activities of the senior party. Whether this be true or not, we think the testimony clearly shows that there was no suppression or concealment of the invention. Henry and those in privity with him were actively engaged in disseminating knowledge of the process and under such circumstances we are of the opinion that the doctrine of Mason v. Hepburn does not apply."

We agree with the above conclusions of the Board. We think it is clear from the record that Henry was the first to conceive and first to reduce the invention to practice. As it is clear that he actually reduced to practice, his delay in getting into the Patent Office is no warrant for holding that his efforts towards reduction to practice amounted only to an abandoned experiment.

■ The doctrine of Mason v. Hepburn, supra, does not apply because, as is pointed out by the Board, the evidence does not show that Henry suppressed, concealed, or abandoned his invention. Severson v. Olson, 64 F.(2d) 694, 20 C. C. P. A. 946; Rolfe v. Kaisling, 32 App. D. C. 582, 588; Callaghan v. Gouverneur et al., 54 App. D. C. 140, 295 F. 961.

It being clear that Henry had fully reduced his invention to practice, the question of his diligence or lack of diligence is not involved in the decision of the issues of this case. The record does not disclose circumstances which would justify a holding either that he had not reduced his invention to practice, or that he was not entitled to be regarded as the first inventor in a patent sense.

We have read the testimony and have considered all the contentions of appellants, but do not feel that it is necessary, in view of our conclusions above expressed, to discuss all the contentions made in appellants' brief, and for the reasons aforesaid we conclude that there is no reversible error in the decision

of the Board of Appeals, and its decision awarding priority of invention in the involved counts to Arthur M. Henry, the junior party, is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.