## OSGOOD v. RIDDERSTROM.
### Patent Appeal No. 3318.

Court of Customs and Patent Appeals.
June 12, 1934.

Charles W. McDermott, of Boston, Mass., for appellant.

George K. Woodworth, of Boston, Mass., and William L. Edmonston, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, in an interference proceeding, involving one count taken from Ridderstrom's patent, No. 1,794,204, issued February 24, 1931, the application for which was filed April 24, 1928, and an application of Osgood filed August 2, 1930, for the reissue of patent No. 1,691,493, which patent was issued on November 13, 1928, on an application filed December 30, 1927.

The invention relates to machines for use in the manufacture of women's shoes to perform the combined operations of tape-applying and seam-pressing, the seam being the back seam which joins a pair of shoe quarters. The count is a broad one and reads: "A tape-applying machine comprising in combination, a work-support provided with a peripheral groove, and means for applying a length of tape to the work placed on said support, and for pressing a portion of said work into said groove."

The decision of the board affirmed that of the Examiner of Interferences. The Patent Office tribunals both held that Ridderstrom conceived the invention in December, 1925, and reduced it to practice in the early spring of 1926. Both dates being prior to any date claimed by Osgood, priority of the invention was awarded to Ridderstrom.

In this court appellant has urged the reversal of the decision of the Board for the following reasons:

First. That owing to the nature of the testimony, which appellant contends is contradictory and lacks proper corroboration with reference to Ridderstrom's conception, the early date of conception awarded Ridderstrom by the tribunals is unwarranted.

Second. That the Board erred in awarding Ridderstrom, for reduction to practice, a date early in the spring of 1926, whereas such reduction to practice was based on Exhibit 4, a machine which had not been properly tested and had not been operated so as to demonstrate the usefulness or practicability of the invention involved in the count.

Third. That the record with reference to Ridderstrom's activities after conception and the long period of time existing between his alleged reduction to practice and filing his application for a patent or making use of the invention shows that appellee's claimed reduction to practice amounted to nothing more than an abandoned experiment.

Fourth. That even if Ridderstrom reduced his invention to practice in the early spring of 1926, the record shows that nothing was done after said alleged reduction to practice between that time and April 24, 1928, when his application for patent was filed and that in the meantime the appellant had completed his invention; that there was as much a withholding of the invention from public use or a concealment of the same on Ridderstrom's part as there was in the case of Gordon v. Wentworth, 31 App. D. C. 150, and that under said Gordon v. Wentworth, and Mason v. Hepburn, 13 App. D. C. 86, the appellee is estopped from claiming the invention in issue; that the element of "stimulation" or being "spurred into activity" is present in this case since it will be presumed, under the facts of record, that Ridderstrom had knowledge of Osgood's activities, citing Whitney v. Brewer, 1912 C. D. 127.

Before the Board, appellant further contended that the decision of the Examiner of Interferences should be reversed on account of estoppel, which appellant said grew out of Ridderstrom's failure to take certain action in some interference with reference to certain claims in an earlier Osgood patent. In this court appellant in his brief states as follows: "In deference to the views expressed by your Honors in Severson v. Olson (Cust. & Pat. App.) 64 F.(2d) 694, and Nystrom et al. v. Mancuso (Cust. & Pat. App.) 64 F.(2d) 698, appellant withdraws from consideration Nos. 9, 10 and 12 of his reasons for appeal (Rec. 257 and 258). Appellant relies upon all the remaining errors set forth in his notice of

appeal (Rec. 256), as his reasons for reversing the decision of the Board of Appeals."

A consideration of all the assignments of error leads us to entertain some doubt as to just what questions appellant meant to withdraw from consideration. In view of the wording of appellant's said assignments 9, 10, and 12, we conclude that in this court he withdrew from consideration the question of estoppel alleged to have arisen on account of Ridderstrom's failure to take some action with reference to certain claims in the Osgood patent, and that it was not the intent of appellant to withdraw from consideration here the question of estoppel involved in the case of Mason v. Hepburn, supra.

We are in complete accord with the decision of the Board of Appeals, and while we do not regard it as necessary to review all the facts and circumstances which are well set out in its decision, we regard it as important to discuss with reasonable brevity the four above-enumerated questions presented in the very exhaustive brief of appellant.

1. Appellee's conception in December, 1925, is based upon a drawing which, according to the testimony of Ridderstrom and Demaso, the draftsman, was completed in December, 1925. Said drawing, Exhibit 1, clearly disclosed the invention in issue. The peripheral groove called for by the count is clearly shown on the drawing in the form of two lines marked "g–g." The record is not clear as to just who put these lines on the drawing—whether it was Demaso or Ridderstrom. Appellant urges that the doubtful character of the record on this subject renders it unsatisfactory as proof of conception on the date claimed, and that the Board erred in holding, in substance, that it did not make any difference who put the lines showing the peripheral groove on the drawing, if, in fact, they were on the drawing on the date claimed.

We agree with the conclusion of the Board in this regard and think the record abundantly supports the conclusion that the drawing made under Ridderstrom's direction was completed on December 10, 1925, and, when completed, contained the said lines "g–g" representing the peripheral groove, and also showed the other elements of the invention defined in the count at bar.

2. Ridderstrom relies upon Exhibit 4 and the testimony as to its being tested and operated as proof of reduction to practice in the early spring of 1926. Exhibit 4 is a tape-applying machine from which projects, as a portion of the same, the so-called work-support which includes two rollers, one on top of the other, which turn in opposite directions and between which the seam to be pressed and taped is passed. The seam is pressed into a peripheral groove in the lower roller. There is no serious contention in this case but what the count in issue reads upon Exhibit 4. The record shows that this machine was operated in the early spring of 1926. Appellant contends, in substance, that the operation was not proven to be a success. Appellee relies upon the testimony of Ridderstrom, as corroborated by McAuliffe, sales manager for the Rotary Company, for whom Ridderstrom worked, for proof of successful operation of the machine at the time in question. McAuliffe stated in answer to a question: "When machines of the type of Exhibit 4 were used for a back seam machine, the lower roll contains a groove. Also a comb. During the operation the cut-off was not used. The shoes were run through the machine one after the other and then were cut apart by the operator, using a pair of scissors."

The Board said that this answer indicated that during the test a cut-off was not used and that a comb was or should have been used. In answer to a question, McAuliffe testified that a comb is desirable on a back-seam pressing machine. He also stated in another answer that it is possible to tape a back seam without a comb. The Board said that the testimony indicated to it that back seam taping may be done without the comb, but that a comb is desirable, and that the testimony concerning the test of Exhibit 4 at the Harney Shoe Company shop, where the exhibit was taken for testing, shows that the machine must have been an operative structure since McAuliffe said that in his judgment the test was all right. The Board said: " * * * It is noted that the count in issue does not call for a comb specifically. This witness, McAuliffe, was a sales manager for the Rotary Company and it would appear that he must be capable of understanding the machines which he handled and of having judgment as to whether that type of work was all right."

Appellant argues at great length that there are contradictions in the testimony, between McAuliffe and Ridderstrom, as to how the grooved roll got over to the Harney shop where it was tested, and that Ridderstrom's and McAuliffe's statements concerning the tests made were conclusions, and for that reason not sufficient to show a proper test, and that McAuliffe's corroborating testimony of the subject of the test is unsatisfactory inasmuch as the only statement he made with

reference to how the machine operated was: "As far as the back seam was concerned, it was all right."

The Board found that there was no contradiction in the testimony of the two witnesses which could not be reconciled, and said:

"We fail to find any necessary contradiction here that cannot be reconciled with the related circumstances. It is noted as to many of the alleged contradictions called to attention by appellant that this type of machine was subject to being changed from a so-called side-taping machine to a back seam taping machine by merely changing certain attachments and that many of the answers to questions were made with the one or the other form of the machine in mind by the witnesses and that misunderstandings as to the form of the machine asked about led to answers which had to be qualified or explained to conform to the intended meaning of the questions. Demaso was asked on cross examination if the machine as it stands is a taping or combined taping and pressing machine and he answered that it was a back seam tape laying machine. Later he was asked why he said that and then when he undertook to operate the machine he first removed a guide which was on the machine. He said that it should have been made clear at the time that the guide in reality should be taken off.

"We do not find that this explanation affords sufficient evidence to show that the witness was falsifying but rather as he stated at the end of his answer to the question R. X. Q. 129, 'Not being familiar with these machines today it is hard for me to remember all of the parts.' While Demaso was not able to produce a product as shown in Exhibit 5 which was satisfactory to Osgood's expert, Ordway, Demaso explained, R. X. Q. 143, 'I mean by that that if I were sitting down running the machine, I could hold that shoe and it would run perfectly even with the groove.' Then in answer to re-cross examination Q. 144, 'I put the shoe in and zigzagged its course. I therefore was not able to get it perfectly even.' "

It is unnecessary for this court to quote the evidence referred to by the Board or to indulge in an extended discussion of the same. To do so, in view of the fact that we agree with the conclusion and the reasons of the board, would be merely to repeat here what was said in the decision we are reviewing. We hold that the record shows that Ridderstrom had completely reduced his invention to practice in the early spring of 1926, as found by the Board and the Examiner of Interferences.

Appellant very strongly urges that it is incredible to conclude that Ridderstrom reduced the invention to practice in the construction and operation of Exhibit 4, since, if he had done so, he was entitled to copy claims from an earlier Osgood patent, not involved here, and contest there the priority of invention of the subject-matter of certain claims; that Ridderstrom has not satisfactorily shown his reasons for not doing so.

The record shows that Ridderstrom did consider the claims, and he explains his failure to file his application and copy a broad claim in the patent by stating that he received legal advice that the claim of that patent which he might have copied was void. The Board passed upon this last-stated contention of appellant as follows: "Appellant also argues that Ridderstrom having by his conduct in the Patent Office conceded that Osgood is the first and true inventor of the generic combined tape-applying and seam-pressing machine disclosed in the Osgood patent No. 1,646,212, cannot in the present interference impeach the said Osgood patent collaterally by proving that Ridderstrom conceived or reduced to practice the subject matter of the said patent prior to June 7, 1926, which is the effective filing date of said patent. Ridderstrom in his testimony stated in effect that he did not copy the broader claim of the Osgood patent for the reason that it was considered void in view of certain prior art called to attention. It has not been argued by appellant that June 7, 1926, the filing date of his prior patent, was the date of the invention involved therein. There has been no interference and there is now no interference involved before us upon this claim of the prior patent, and it is not conclusive that a date prior to June 7, 1926, would necessarily be earlier than Osgood's date of invention. Therefore it is not apparent to us that proof offered here as to the count in issue prior to the filing date of appellant's prior patent necessarily precedes the date of said invention in said patent."

The Board and the Examiner of Interferences have both passed upon the facts in this case relating to the dates of conception and reduction to practice and arrived at the same conclusion for substantially the same reasons. This places a strong burden upon appellant, which, in his brief, he acknowledges and states that he assumes.

In Jardine v. Long, 58 F.(2d) 836, 19 C. C. P. A. (Patents) 1243, this court said: "It

is also realized, we are sure, that where it appears that the tribunals originally hearing the case made a careful and painstaking scrutiny of the evidence, and that the intermediate appellate tribunal examined and independently weighed the same testimony, with the result that both reached the same conclusion, for the same reasons, then the burden of one appealing to convince us of error in their decisions is very great."

This court has often said that where the tribunals of the Patent Office have concurred upon findings of fact, this court will accept such findings unless the same are manifestly wrong. Bennett v. Fitzgerald, 48 F.(2d) 917, 18 C. C. P. A. (Patents) 1201. We are of the opinion that the tribunals below reached the right conclusion in their findings of fact.

3. Having held that appellant had completed his invention and reduced it to practice in the early spring of 1926, appellant's contention that Ridderstrom's subsequent acts prompt the conclusion that what Ridderstrom did in the way of reducing the invention to practice amounted only to an abandoned experiment is without merit. Hedenskoog v. Backus, 48 F.(2d) 408, 18 C. C. P. A. (Patents) 1065. The subsequent acts of Ridderstrom, in our view, have no relevancy to his reduction to practice, but are pertinent and proper for consideration in determining whether there was any suppression, concealment, or other conduct which makes applicable the so-called estoppel doctrine announced in Mason v. Hepburn, supra. Severson v. Olson, 64 F.(2d) 694, 20 C. C. P. A. (Patents) 946.

4. Appellant urges that the facts in this case warrant the application of the doctrine announced in Mason v. Hepburn, supra, and his contentions in respect thereto have been heretofore stated. Appellant, recognizing the importance of the element of "stimulation" or being "spurred into activity" by the acts of the rival inventor, as an important element for consideration in determining the applicability of the doctrine in Mason v. Hepburn, contends that we must presume that Ridderstrom had knowledge of Osgood's patent and that since there was a period of nearly two years between the reduction to practice and the filing date, he must be held to have concealed and suppressed the invention.

We agree with the Board that the facts in this case do not warrant the application of the doctrine of the Mason v. Hepburn Case. There is no showing in the record before us of concealment or suppression. On the contrary, appellant was manufacturing and selling machines which involved the invention of the count here under consideration before his application was filed. The delay is also explained in the record by the showing that Ridderstrom worked on certain other features of his device and that, when these had been tested, he filed application for the entire machine. It must be remembered that the question of diligence is not involved. Moreover, it is not clear to us that Ridderstrom's Patent Office activities were prompted by any knowledge of anything being done by the appellant. Nothing in this record which is presented here for our consideration justifies the application of the doctrine of estoppel, or any doctrine akin to estoppel, which would deny Ridderstrom the right to claim or receive a patent for the subject-matter involved in this interference proceeding. For a full discussion of the doctrine of Mason v. Hepburn, supra, see the following cases: Miller v. Hayman, 46 F.(2d) 188, 18 C. C. P. A. (Patents) 848; Severson v. Olson, supra.

Since we find no error in the decision of the Board of Appeals affirming the decision of the Examiner of Interferences, awarding priority of invention of the subject-matter of the count in issue to Ridderstrom, its decision is affirmed.

Affirmed.

HATFIELD, Associate Judge, did not participate.