24 C.C.P.A.(Patents)

## FREY v. WAGNER.

### Patent Appeal No. 3737.

Court of Customs and Patent Appeals.
Jan. 25, 1937.

HATFIELD, Associate Judge, dissenting.

Barry & Cyr, of Washington, D. C. (Robt. E. Barry and Armand A. Cyr, both of Washington, D. C., of counsel), for appellant.

Edward H. Lang, of Chicago, Ill. (Thomas E. Scofield, of Kansas City, Mo., and William S. McDowell, of Columbus, Ohio, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner of Interferences which awarded priority in the subject matter of the interference to the party Wagner. The interference is between the patent of the party Frey, No. 1,847,240, dated March 1, 1932, issued upon an application filed June 6, 1930, and an application of the party Wagner filed October 10, 1932. The single count of the interference was copied from the Frey patent by the party Wagner, who, at the same time, requested an interference. Said count is as follows: "In a process for obtaining low boiling point hydrocarbon liquid polymers predominantly of the motor fuel range from olefinic hydrocarbon gases, continuously compressing said gases to a pressure between 500 and 2000 pounds per square inch, subsequently passing said gases under such pressure through an elongated passageway of restricted cross sectional area while heating the gases therein to a temperature sufficient to initiate polymerization of said gases, then passing said gases through an enlarged zone under said pressure and at slower velocity while maintaining the gases in said zone for a period of time sufficient to obtain an exothermic reaction and at temperatures between 700 and 1000° F. without introducing any extraneous heat into the zone, and then separating low boiling liquid polymers so produced."

The petition for appeal recites that a former interference upon the same subject matter had been declared between said patent and an application of the party Wagner, filed April 11, 1929. This former interference was dissolved by the Examiner of Interferences on March 24, 1933, on the ground that the single count of the interference was not sustained by the disclosure of the Wagner application, and this

decision was affirmed by the Board of Appeals upon appeal.

In the interference at bar, the party Frey rested upon his date of filing, and took no evidence. The party Wagner took evidence upon the question of his dates of conception and reduction to practice.

The matter having been submitted to the Examiner of Interferences, a decision awarding priority of invention to the party Wagner was made, and this, upon appeal, was affirmed by the Board of Appeals.

It appears from the record that the Frey patent was issued before the date of filing of the party Wagner's application. Therefore, the burden rested upon the party Wagner to maintain his case by evidence showing a prior conception and reduction to practice, beyond a reasonable doubt. The Examiner of Interferences and the Board of Appeals agreed in the conclusion that he had successfully maintained the burden thus resting upon him, and that prior to the date of filing of the Frey application, the party Wagner had conceived and reduced to practice the invention which is the subject matter of this interference.

The subject matter of the interference is fairly well disclosed by the count of the interference heretofore quoted. The principal question for decision here is whether the count of the interference reads upon the apparatus and process employed by the party Wagner. Counsel for Frey insist that the process practiced by Wagner does not satisfy the count, and in the decision of the matter consideration must necessarily be given to the particular language employed in the count.

The party Cary R. Wagner was, at the time the evidence was taken, chief chemist for the Pure Oil Company of Columbus, Ohio. After graduating from Wooster College and Purdue University, beginning with the first week in August, 1918, he had been continuously employed as a chemist in oil processing, and, since March, 1926, was employed in investigations of vapor phase methods of cracking oils. In this work he became interested in the utilization of gases produced as the result of vapor phase cracking processes, with the idea of ultimately making use of the same for motor fuel. At his instigation, the Pure Oil Company installed three units of the so-called gyro process, at Cabin

Creek, W. Va., and began at once to prepare gas oil from the olefinic hydrocarbon gases produced in the gyro process. On the 10th of April, 1928, he prepared a sketch of an apparatus, and of a process which he desired to have tried by his company, in which high pressure and high temperatures were employed to polymerize such gases. From this sketch, an experimental apparatus was built, which used a compressor, a heater, a reaction chamber, and an accumulator tank. The heating coil was made of ¼-inch double extra strong pipe having a diameter of approximately .25 inches. The reaction chamber was made of iron pipe with an inner diameter of 1½ inches, and was 3 feet in length. This apparatus was operated from August to September, 1928. At that time the party Wagner concluded the reaction chamber was too small, and thereupon a new reaction chamber of heavy pipe, 4 inches in inner diameter, was procured and substituted for the first reaction chamber.

The apparatus was run with this new reaction chamber until about October 17, 1928, when, on the seventh run, it was found that the reaction chamber was swelling, and because of danger of an explosion, the use of it was discontinued. Thereupon a reaction chamber was prepared with a steam chamber fitted to it, by means of which steam could be circulated about the chamber to control its temperature. This plant was then operated until October, 1929, when it was dismantled and shipped to Marcus Hook, Pa., where the company was maintaining an experimental gyro gas unit. The experimental plant at Marcus Hook was erected in November, 1929, and began to operate about January 1, 1930. The Marcus Hook plant was built substantially like the plant at Cabin Creek, W. Va. This plant was operated until a commercial plant was built at the Toledo, Ohio, refinery of the Pure Oil Company, construction beginning in the fall of 1930. The last-named plant was completed and ready to begin operations about April 1, 1931, and was operated continuously up until June, 1933. In operating the Cabin Creek apparatus, the pressure ranged from 600 pounds to 800 pounds per square inch in the early experiments in 1928, and later the pressure was increased to 1,000, and in some cases 1,100 pounds. This pressure was maintained until the gases had passed through the condensing coil and was then reduced. While the gases were passing through the reaction chamber, the record

shows that they were slowed up and did not pass through this chamber as rapidly as through the heating coil and remainder of the system. The temperature during these experiments was from 600° to 900° F. at the point where the gases entered the reaction chamber. In the reaction chamber, due to exothermic reaction, the temperature of the gases increased.

In the plant at Marcus Hook, several methods were used to control temperature in the reaction chamber. Sometimes this was done with flue gases and sometimes with steam, but in each process the temperature of the surrounding medium was less than the temperature within the reaction chamber, so that the effect was to lower the temperature in the reaction chamber. In the Toledo commercial plant, a very long reaction chamber was used, sometimes of the length of from 600 to 700 feet, of 3⅝ inches internal diameter, this type of reaction chamber being used because the company had, at that place, an excess amount of this kind of tubing which could be used for that purpose. So far as the record shows, the operation of the plants in each case produced the effect desired, namely, the production of motor fuel, and the record demonstrates conclusively that from the beginning of the experiments to the final construction and operation of the Toledo plant, the work and experimentation were continuous. Wagner and his company were continuously attempting to produce better results, but the process at all times was conducted along the same general lines as those employed in the first Cabin Creek, W. Va., experimental apparatus.

We are satisfied, as were the Examiner of Interferences and the Board of Appeals, that Wagner has sustained the burden of establishing, beyond a reasonable doubt, that prior to the filing date of Frey, Wagner had conceived and reduced to practice the subject matter of the interference. It is argued, however, by counsel for Frey, that inasmuch as the count was taken from the Frey patent, it should be construed as requiring a process in which heat is neither added to nor abstracted from the reaction zone. If the language of the count were ambiguous, we would be justified in going to the Frey patent for aid in construing the language. However, there does not seem to be anything ambiguous about the language of the count. The count specifies that the gases shall pass through the reaction chamber

"at temperatures between 700 and 1000° F. *without introducing any extraneous heat into the zone.*" (Italics ours.) There is here no language which intimates that heat may not be abstracted from such zone, and, therefore, we may not conclude that because the Frey patent may so specify, that the Wagner disclosure is insufficient in that it does abstract heat. It is also intimated that heat may be added by the Wagner process to the reaction chamber, because at times it is exposed to steam heat or to heat from the flue gases. However, the record shows conclusively that in all such cases the temperature of steam or of the flue gases was below that of the vapors within the reaction chamber, and hence the effect was a lowering of temperature and not of an increase thereof.

It is argued by the appellant that, as shown by the Frey disclosure, it was intended to bring the heat in the heating coil to a temperature where *initiation* of the reaction process would start and no further, and that the reaction itself should occur in the reaction chamber. It is then argued that because Wagner used a temperature where a considerable reaction occurred in the heating zone, as it is alleged, therefore his disclosure does not satisfy the count which recites "a temperature sufficient to *initiate* polymerization of said gases." (Italics ours.) As remarked by the Board of Appeals, this would indicate that appellant is of opinion that the count should read as if the word "only" were inserted before the word "initiate," thus confining the heat within the heating zone to a temperature *only* sufficient to begin or initiate polymerization. However, it will be observed, as the Board of Appeals remarked, that there is no such limitation in the count, and, so far as the count is concerned, a temperature that would cause polymerization, in addition to initiation of the same, would, nevertheless, satisfy the count. We are, therefore, of opinion that this point is not well taken.

Again it is argued that the doctrine of Mason v. Hepburn, 13 App.D.C. 86, should be applied here as against Wagner's right to priority. It is argued that Wagner filed two applications after he had been allegedly conducting his experiments at Cabin Creek and at Marcus Hook, which were held by the tribunals of the Patent Office not to satisfy the present interference count, and it was only in the third application, dated October 10, 1932, that Wagner was able to make a disclosure which did satisfy the count of the present interference. From this it is argued that the party Wagner had abandoned his first experimental ideas, and had finally, moved to activity by Frey's patent, adopted Frey's method and processes. Thus it is argued he should be held to be barred by a doctrine akin to estoppel, as was the holding in Mason v. Hepburn, supra.

Whatever may be said to have been the changes of apparatus and process by Wagner is inconclusive, as it seems to the court, in view of the undisputed testimony as to the process used by Wagner at Cabin Creek and at Marcus Hook. There certainly was no concealment or suppression of the processes which he was experimenting with and using. The photographs in evidence, as well as the testimony of the witness, show that the experimental plants were conducted at those places, and that they were not concealed, but openly operated where employees and any one in that locality might view them. That Wagner was constantly experimenting with his processes does not argue that he had abandoned his first processes. The law does not punish an inventor for attempting to perfect his process before he gives it to the public. In fact, reasonable experimentation is frequently encouraged. Appert v. Brownsville Plate Glass Co. (C. C.) 144 F. 115; Benjamin W. Jones v. Clarence T. Evans, 46 F.(2d) 197, 18 C.C. P.A. (Patents) 866; Altorfer & Dehle v. Haag, 74 F.(2d) 129, 22 C.C.P.A. (Patents) 806.

We are not disposed to extend the doctrine of Mason v. Hepburn, supra. We are unable to discern in anything that the party Wagner did in this case, any attempt to conceal or suppress the invention, the subject-matter of this interference. James G. MacLaren v. Joseph J. Stoetzel, 38 F. (2d) 125, 17 C.C.P.A. (Patents) 857; Nystrom & Landwehr v. Mancuso, 64 F.(2d) 698, 20 C.C.P.A. (Patents) 934.

The burden was upon the appellant to establish among other things, a concealment or suppression on the part of the party Wagner, if the doctrine of Mason v. Hepburn, supra, is to be applied. We agree with the Board of Appeals that he has failed to sustain this burden.

The decision of the Board of Appeals of the United States Patent Office is affirmed.

Affirmed.

HATFIELD, Associate Judge, dissents.