51 CCPA

**Albert LORENZ, Appellant,**

v.

**Charles W. FINKL, Appellee.**

**Patent Appeal No. 7125**

United States Court of Customs and Patent Appeals.

June 25, 1964.

Burgess, Dinklage & Sprung, New York City, Martin T. Fisher, Washington, D. C. (Ralph Dinklage, New York City, of counsel), for appellant.

Parker & Carter, James G. Staples, Arthur H. Boettcher, Chicago, Ill., for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of invention to the junior party Finkl[1] in Interference No. 91,281 on the sole basis that the other application in the interference, serial No. 750,167, filed July 22, 1958 by the senior party Lorenz, is an abandoned application.

The record reveals that all the claims of the Lorenz application numbered 1 through 6 were finally rejected solely on art by the examiner on June 19, 1959.[2] The end of the six month statutory period for response fell on December 19, 1959, and this being a Saturday, Lorenz had until December 21, 1959, to make such response as the condition of the case required.

On December 7, 1959, Lorenz submitted a paper requesting that certain amendments be made in finally rejected claims 1, 4 and 6[3] "to more succinctly define the present invention and to render the claims patentably definitive over the cited references." In that paper, he also argued patentability over the cited art. Lorenz did not file an appeal to the Board of Appeals.

On December 23, 1959, the examiner sent a letter to Lorenz which is reproduced in toto as follows:

"Responsive to amendment filed December 7, 1959.

"Additional reference made of record:

Vogt    2,093,666    Sept. 21,    1927
                              266–34 Vac. Dig.

"The amendment dated December 7, 1959 has been considered. If and when requested, the amendment will

---

1. The Finkl application involved in the interference is serial No. 777,664 filed on December 2, 1958.

2. The following claim appears illustrative of the finally rejected claims in the Lorenz application as of June 19, 1959:
   "1. The method of degasifying molten metal which comprises arranging the metal in the molten state in a container, exposing the upper surface of the metal to a pressure effective to cause gas dissolved in the molten metal adjacent said upper surface to escape from the molten metal, said pressure being ineffective to cause dissolved gas in the molten metal remote from the upper surface to escape due to the weight of the metal, and introducing a gas into the molten metal a substantial distance below said upper surface in an amount sufficient to cause bubbling of the introduced gas through the molten metal and to circulate the molten metal within the container causing portions thereof to move to adjacent the exposed surface, whereby improved degasification of the molten metal within the container is effected."

3. With respect to illustrative claim 1 (see footnote 2) the amendment apparently involved changing that claim so that the method of degasifying the molten metal is carried out in a "closed unitary zone" rather than in a "container" and also the introduction of the gas into the molten metal in the claimed method is "in a downwardly inclined direction."

be entered for purposes of appeal only.

"For purposes of showing that the use of a closed unitary zone is an expedient of the art, Vogt is cited."

On May 20, 1960, the examiner in a letter to Lorenz suggested a claim, "found allowable," for purposes of interference. Thereupon Lorenz in an amendment of June 3, 1960 requested that the suggested claim [4] be entered for purposes of interference.

On August 16, 1960, the interference was declared. In the final paragraph of the letter of that date to Lorenz, the examiner stated:

"Claims 1–6 will be held subject to rejection as unpatentable over the issue in the event of an award of priority adverse to applicant."

On March 2, 1961 the interference examiner stated that Finkl alleged no date in his preliminary statement prior to the filing date of Lorenz and gave notice that judgment on the record would be entered against Finkl unless on or before May 17, 1961, he showed good and sufficient cause why such action should not be taken.

On May 17, 1961, Finkl filed a motion to dissolve the interference contending that "there has been such informality or irregularity in declaring the same as will preclude the proper determination of the question of priority of invention." Finkl urged that the "irregularity or informality in the declaration of the interference is based on the fact that the Lorenz application was abandoned long prior to the institution of this interference." [5]

On October 12, 1961, the examiner [6] denied Finkl's motion to dissolve stating:

" * * * The sole judge as to what constitutes 'appropriate action' is the Commissioner of Patents and, through his delegated authority, the Examiner. It is obvious that the Examiner had reversed his decision as to patentability of the Lorenz application after the presentation of the amendment dated December 7, 1959; that the amendment was responsive under Rules 113, 116 and 135 and that the application was in condition for allowance."

On November 21, 1961, Finkl petitioned the Commissioner of Patents to (a) set aside the examiner's decision of October 12, 1961, (b) declare the Lorenz application abandoned, and (c) direct the examiner to dissolve the interference.

The Commissioner on December 7, 1961 denied Finkl's petition stating:

"Whether or not an application involved in interference has become abandoned is a question which is ancillary to priority and can be considered in due course by the tribunals passing on that question (Bain et al. v. Hasselstrom et al, 1948 C.D. 167, [165 F.2d 436] 35 CCPA 811, 76 USPQ 302). It is ordinarily desirable that this issue be considered in that matter and no sufficient reason is found for making an exception in the present case. Accordingly,

---

4. The suggested claim which is the count of the interference reads:

"A method of removing deleterious gases from a confined volume of molten metal in a receptacle, said method including the steps of subjecting the surface of the confined volume of molten metal to a vacuum sufficient to degas the molten metal, and simultaneously passing a sufficient quantity of a carrier agent upwardly through the molten metal to induce a circulation entirely within the receptacle which brings substantially undegassed molten metal from remote areas in the receptacle to the surface."

5. Finkl also moved to dissolve on the basis that Lorenz has no right to make the claim in the interference. The examiner denied the motion to dissolve on that ground and the record indicates that Finkl did not appeal the examiner's decision on this point.

6. The record indicates that the same examiner was involved in the letter of December 23, 1960, the letter of May 20, 1960 suggesting the claim for interference, the declaration of interference on August 16, 1960, and the decision of October 12, 1961.

the petition is denied without prejudice to the right of the petitioner to raise the issue of abandonment of the Lorenz application in subsequent proceedings in this interference."

The board then on September 28, 1962 held that the Lorenz application was abandoned and awarded priority of the subject matter in issue to Finkl. It stated:

"It is apparent that the amendment [of Dec. 7, 1959] was refused entry and the final rejection was not withdrawn. It is also apparent that the Examiner was not impressed with the proposed amendment since his action indicated that changing 'a container' which necessarily operated under vacuum conditions to 'closed unitary zone' presented no patentable change . The Vogt patent accordingly was cited as showing that the proposed change represented only an 'expedient of the art.'

"It is clear that for the response to be such as the condition of the case required, the amendment should be such as to place the case in condition for allowance or better condition for appeal and if the latter, the filing of an appeal. These requisites should have been accomplished before the statutory period expired. Lorenz met neither of these requirements. It would seem in view of the plain requirements of Rule 116 that ordinary prudence would have dictated the filing of an appeal not later than December 21, 1959, if Lorenz intended to save the case from abandonment. In this connection it is to be noted that Rule 116(a) states (with respect to amendments placing the case in better form for consideration on appeal):

"* * * the admission of any such amendment or its refusal, and any proceedings relative thereto, shall not operate to relieve the application from its condition as subject to appeal or to save it from abandonment under rule 135.

\* \* \* \* \*

"It is true, of course, that the Examiner could reverse his opinion on patentability and withdraw the final rejection if the amendment of December 7th had placed the case in condition for allowance. The Examiner's action of December 23rd plainly shows he took no such action and the proposed amendment was not entered. Since no appeal was taken, it is believed manifest that Lorenz made no response within the statutory period such as the condition of the case required. \* \* \*"

Referring to the examiner's letter of May 20, 1960, the board stated:

"* * * It is true that the Examiner found allowable matter in the Lorenz application five months later when he suggested the present count on May 20, 1960, but we cannot agree that even then the case was in condition for allowance, since the case still contained six claims under rejection without appropriate action by Lorenz."

The board further stated that the "subsequent finding of allowable subject matter came too late since the Examiner has no power to in effect revive an abandoned application."

Referring to a contention by Lorenz that Finkl is in effect attacking an action or ruling by the Commissioner, the board found it without merit stating:

"* * * The Examiner has never held in the involved Lorenz application that the proposed amendment of December 7th was an 'appropriate action'. Under the circumstances there is nothing before us for review in this regard and the contention that we have no authority to review the action of the Commissioner needs no comment other than to say we well recognize we have no such authority. This is not to say that we cannot review the Examiner's action since his action manifestly was not the Commissioner's action."

Appellant urges that the December 23, 1959 action could and did validly with-

draw the finality of the rejection of the Lorenz application. Appellant contends that even if the December 23, 1959 action did not withdraw the finality of the rejection, it did not irreversibly spell out abandonment of the Lorenz application, and the May 20, 1960 action could and did validly withdraw the finality of the rejection. Appellant further argues that the Board of Patent Interferences did not have the right to review the examiner's actions.

Appellee, on the other hand, argues that abandonment of an application is ancillary to priority and that the Lorenz application became abandoned December 21, 1959, by operation of law for lack of a complete and proper response to the final rejection of June 19, 1959. The appellee contends that the examiner has no discretionary power to waive the requirements of the rules of practice.

The issue before us is whether or not the application of Lorenz is an abandoned application. The determination of that issue is governed by the Patent Act of 1952.

According to that Act, failure of an applicant to "prosecute" an application within six months after any action therein, of which notice has been given or mailed to the applicant, results in the application becoming abandoned.[7] An applicant for a patent, any of whose claims has been twice rejected, may appeal from the decision of the examiner to the board.[8] Thus an applicant need only "prosecute" an application within six months after any action by the Patent Office on the application or he may appeal to the board from the decision of examiner after any of the claims had been twice rejected. We think it apparent, however, that Congress did not intend that an applicant should be able to "prosecute" his application indefinitely before the Patent Office. An orderly administrative process demands an end to prosecution.

Rather, Congress authorized the Commissioner to establish rules or regulations not inconsistent with law for the conduct of proceedings in the Patent Office.[9] These rules include:

Rule 135 (in part):

135. "Abandonment for failure to respond within time limit. (a) If an applicant fails to prosecute his application within six months after the date when the last official notice of any action by the Office was mailed to him, * * * the application will become abandoned.

"(b) *Prosecution of an application to save it from abandonment must include such complete and proper action as the condition of the case may require. The admission of an amendment not responsive to the last official action, or refusal to admit the*

7. 35 U.S.C. § 133 reads:
   "§ 133. Time for prosecuting application
   "Upon failure of the applicant to prosecute the application within six months after any action therein, of which notice has been given or mailed to the applicant, or within such shorter time, not less than thirty days, as fixed by the Commissioner in such action, the application shall be regarded as abandoned by the parties thereto, unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable."

8. 35 U.S.C. § 134 reads:
   "§ 134. Appeal to the Board of Appeals
   "An applicant for a patent, any of whose claims has been twice rejected, may appeal from the decision of the primary examiner to the Board of Appeals, having once paid the fee for such appeal."

9. 35 U.S.C. § 6 reads:
   "§ 6. Duties of Commissioner
   "The Commissioner, under the direction of the Secretary of Commerce, shall superintend or perform all duties required by law respecting the granting and issuing of patents and the registration of trade-marks; and he shall have charge of property belonging to the Patent Office. He may, subject to the approval of the Secretary of Commerce, establish regulations, not inconsistent with law, for the conduct of proceedings in the Patent Office."

*same, and any proceedings relative thereto, shall not operate to save the application from abandonment."*

Rule 113 (in part):

113. "Final rejection or action. (a) On the second or any subsequent examination or consideration, the rejection or other action may be made final, whereupon applicant's response is limited to appeal in the case of rejection of any claim (§ 1.191), or to amendment as specified in § 1.116. * * * Response to a final rejection or action must include cancellation of, or appeal from the rejection of, each claim so rejected and, if any claim stands allowed, compliance with any requirement or objection as to form."

Rule 116 (in part):

116. "Amendments after final action. (a) *After final rejection* or action (§ 1.113) *amendments may be made cancelling claims or complying with any requirements of form which has been made, and amendments presenting rejected claims in better form for consideration on appeal may be admitted; but the admission of any such amendment or its refusal, and any proceedings relative thereto, shall not operate to relieve the application from its condition as subject to appeal or to save it from abandonment under § 1.135."* [Emphasis ours.]

■ Applying the above rules to the factual situation before us, the action of the examiner on June 19, 1959 on the Lorenz application was a final action. Although an appeal was due on December 21, 1959 Lorenz did not file an appeal. As of December 21, 1959, the end of the statutory period for prosecuting the application, we think the record shows that Lorenz had not filed an amendment which was a "complete and proper action as the condition of the case may require" to save the application from abandonment. The claims stood finally rejected solely on art. The proposed amendment filed December 7, 1959 was not accepted as overcoming the art rejection by December 21, 1959 as is evident from the examiner's action of December 23, 1959, which indicated that the December 7 amendment, would be entered if and when requested for purposes of appeal *only*. If the examiner had regarded the amendment as a complete and proper response to the final rejection, he necessarily would have found the application allowable and there would have been no reason for the examiner to refer to an appeal.[10]

Moreover, we think it clear from the December 7 amendment itself that Lorenz did not necessarily anticipate this amendment to be a complete and proper response to the examiner's final action of June 19. In his remarks accompanying that amendment Lorenz specifically recognized that an appeal might be necessary, using the following language:

"In view of the foregoing reconsideration of the rejection and allowance of the claims as amended is respectfully requested. In any event entry of the instant amendment is urged as it is believed to place the application in allowable condition *or at least in better condition on appeal.*" [Emphasis ours.]

Accordingly, since the clear import of the examiner's letter of December 23, 1959 was that the proposed amendment of December 7, 1959, did not constitute a complete and proper response to the examiner's final action of June 19, 1959, and since appellant did not file an appeal within the six month statutory time period, we agree with the board that the Lorenz application is abandoned. As a result Lorenz is not entitled to prevail in the interference.

10. Although the record indicates that the examiner on October 12, 1961 in his decision on Finkl's motion stated, for the first time, that Lorenz's amendment dated December 7, 1959 was responsive and that the application was in condition for allowance, the record indicates that that amendment has never been entered in the application.

We do not consider the examiner's letter suggesting a claim for interference on May 20, 1960 and his subsequent actions to have the effect of saving Lorenz's application from abandonment. Section 133 [11] permits revival of an abandoned application when "it be shown to the satisfaction of the Commissioner," that delay in prosecuting was unavoidable and no such showing was made. Authority for so reviving an application has not been delegated to the examiner but is retained by the Commissioner under Patent Office Rule 137. [12]

We further do not agree with Lorenz that the board lacks the right to review the examiner's actions. The question of whether an application in interference is abandoned is ancillary to priority. That question having been properly raised by Finkl, the board had the responsibility of deciding it. Bain v. Hasselstrom, 165 F.2d 436, 35 CCPA 811.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.

RICH, Judge (dissenting).

The majority opinion, with all due respect, though full of the sound and fury of many statutes and rules, overlooks three significant factors.

## A.

Preliminarily, this is not a case in which an applicant is being held to strict compliance with the Rules of Practice of the United States Patent Office in the interest of preserving sound procedural requirements.

This is a case in which an applicant, who has proceeded entirely to the *satisfaction* of the Patent Office,[1] and has become involved in an interference *due to* procedures initiated by the Patent Office, is losing an award of *priority* to another inventor who, on the record, is the *later* inventor—a Junior Party.

This Junior Party, attempting to *avoid* the contest on priority which the Patent Office set up and maintained through the decisions on motions, is raising a hue and cry based on a technicality having no bearing on the public interest or on the maintenance of proper procedure in the Patent Office. Having been put under an order to show cause why priority should not be decided *against* him, the *Junior Party* asserts the Lorenz application was "abandoned," though the Patent Office, under its own rules and practice, did not consider it to be.

I will now take up the three important considerations which in my opinion demonstrate error in the conclusion of the majority and in the reasoning by which it is reached.

### I

The first matter overlooked by the majority is that its decision flies straight in the face of this court's own holding in Bain et al. v. Hasselstrom et al., 165 F.2d 436, 35 CCPA 811. That was a very carefully considered case on this very issue of an application becoming abandoned by failure to respond to a final rejection and being put into an interference wherein the party who was defeated on dates attempted to win the *priority* decision by a technical claim of "abandonment," based on failure to respond to a final rejection.

I know there are factual differences on the basis of which an attempt might be made to distinguish the present case from the Bain case, but no such attempt has yet been made. However, there are

---

11. See footnote 7.

12. Rule 137 reads:
    137. "Revival of abandoned application. An application abandoned for failure to prosecute may be revived as a pending application if it is shown to the satisfaction of the Commissioner that the delay was unavoidable. A petition to revive an abandoned application must be accompanied by a verified showing of the causes of the delay, by the proposed response unless it has been previously filed, and by the petition fee."

1. Up to the decision of the Board of Patent Interferences, which was the last act and the only round of the fight lost by appellant.

*questions* there dealt with and decided by this court which cannot be distinguished from.

Bain was the Junior Party. He tried to win, just as Finkl does here, by a motion to dissolve on the ground of informality in declaring the interference in that the Hasselstrom application was abandoned by failure to reply to the final rejection. Bain's case was even stronger than Finkl's. *No response was ever made to the final rejection.* This court held there was no abandonment.

The examiner had sent Hasselstrom a letter suggesting a claim for interference, he made it and the interference was declared, as here. The only difference from the instant case was that that examiner's letter was mailed before the 6-month period ended. The interference was declared *after* the 6 months were up.

What this court decided, after briefing by the Patent Office, on request, as well as by the parties, was that *suggesting claims to an applicant for interference purposes is a new action in the case* and that the provisions of the rules (then Rule 77, now 135) about abandonment no longer apply.

A "leading case" in the Patent Office was cited in Bain in which the claims were not *made* by the applicant until *after* the period allowed for response to a rejection (then one year). Coulson v. Callender et al., 1902 C.D. 395. Several other cases also were cited following it, including Ex parte Kohn et al., 1932 C.D. 9, and Ex parte Larner, 1929 C.D. 18. This court wrote a supplemental opinion on rehearing reiterating its position that *suggesting a claim is a new Patent Office action.* It accepted what the Patent Office stated to be its policy in the Kohn case, as follows:

> "Where claims are suggested to an applicant for interference purposes such action is deemed, as held in the above referred to Coulson v. Callender et al. decision, a new action in the case. In effect such action is an offer to the applicant of the allowance of claims for his in-

vention if presented in the suggested form and if he can prove he is the prior inventor. The provisions of Rule 77 are not deemed to extend to actions in cases in which claims are suggested for interference provided of course such claims are presented within the designated period."

The result in the Bain case, of course, was that Hasselstrom et al. were held *not* to have abandoned their application *though they never made any response whatever to the final rejection,* because they copied suggested claims within the time given them to do so, that suggestion having been a *new action* by the Patent Office.

I know of nothing to prevent an examiner from withdrawing a final rejection, sua sponte, to put an application into an interference in order to assure that the patent goes to the proper first inventor. The majority cites none. In section III hereof I show it is proper procedure.

It seems to me that what the examiner did here is in the public interest. I cannot agree with the unsupported notion of the majority opinion that Primary Examiners are without authority to revive abandoned applications because of Rule 137 and an empty theory that the "Commissioner" alone retains that authority. But, as shown infra, we are not dealing with *revival* here. Every act done in the Patent Office below the level of the boards is in the name of the Commissioner.

Attention is called to Rules 182 and 183 under which the "Commissioner" "when justice requires" *can* act outside of any rules he has made. These rules are not mentioned in the majority opinion.

II

The second point overlooked is that whether the application was ever in a state of "abandonment" was entirely dependent on whether the amendment, timely filed on December 7, 1959, was or was not responsive.

If it *was* responsive, of course there was no abandonment. *Either it was or it*

*was not*, and what anybody *thought* about it is not controlling until there is a final authoritative decision on that issue. Included here are the first thoughts of the examiner and the probable thoughts of the attorney. They are quite irrelevant.

Let it not be overlooked that in this case, within all the rules and statutes cited by the majority, applicant made *timely* response to the final rejection, which response is alleged to be sufficient, under all the rules and statutes, to put the application in condition for allowance.

If it in fact did so, there was never any abandonment.

On October 12, 1961, the examiner held the amendment to *be* "responsive under Rules 113, 116 and 135 and that the application *was* in condition for allowance." (My emphasis.)

It is also to be inferred that earlier, on May 20, 1961, in his "new action" suggesting the claim, he found the application to be allowable, at least with that claim in it. Only "allowable" applications can be put into interference. Rule 201(b). Interference Law and Practice, Revise & Caesar, Chap. II.

The Board of Patent Interferences said:

"It is *true, of course*, that the Examiner could reverse his opinion on patentability and withdraw the final rejection if the amendment of December 7th had placed the case in condition for allowance." [My emphasis.]

It also said:

'* * * an Examiner *can reverse his judgment* as to whether or not an amendment was responsive and *act on a case which he previously held abandoned*. This is correct but does not fit the situation here, since the Examiner never *held* the amendment *was* responsive and never previously held the case was abandoned. We cannot read into the Examiner's actions holdings which he did not make on the record." [My emphasis.]

I do not understand the last statement. The words following "This is correct"

seem (a) a complete non-sequitur and (b) contrary to the fact of the examiner's October 12 holding of sufficiency quoted above. What did the board demand, a label on the paper saying "Allowance, final rejection withdrawn"? I do not see how the examiner could have made a clearer ruling.

I am unable to find how the board arrived at a finding of a holding by the examiner of non-responsiveness except by denying to him the very right to change his mind which it held he had. See infra part III for further on this right.

The board did not go into the merits of the amendment as a response and, if I understand its confusing opinion at all, it held "there is nothing before us for review in this regard."

Consequently the *responsiveness* of the amendment is not before this court for review as it was either not before the board or not decided by it if it was.

The examiner having held that the amendment put the case in condition for allowance, there *never was* any abandonment.

III

The unstated presumption underlying the rationalization of the majority opinion is that a reversal in this case would play havoc with established procedures in the Patent Office. The situation is quite otherwise. It is the affirmance that will play havoc with them.

The place we look to see what the procedure now is—or is supposed to be—is the Manual of Patent Examining Procedure (MPEP), upon which appellant here strongly relies and which the majority wholly fails to mention, even those sections considered by the board.

The fallacy into which the majority reasoning falls is the same one which the MPEP warns the examiners against in 711.03(c), the failure to distinguish between (1) "A petition to revive an *abandoned* application" and (2) "a petition from an Examiner's *holding* of abandonment." (My emphasis.) In other words, a *holding* does not create an abandon-

ment. If there *is* an abandonment, you have to *revive* the application. But *if there is only a holding, you can argue that it was wrong.* As the cited paragraph points out—and I note this particularly in refutation of the majority opinion footnotes 11 and 12 and their related text—if one is petitioning to *revive,* the application is *assumed* to be "abandoned," the matter falls under Rule 137 and the petition requires a fee of $10. If the issue is *whether* the application ever became abandoned "the petition from such a holding comes under Rule 181 and does not require a fee." The majority does not seem to appreciate this crucial difference and ignores the existence of Rule 181 and the procedure established under it.

What we have in this case—the sole issue in the case—is only a question of *whether* the application was ever abandoned and until it is clear that it was, revival and the law and rules relating to revival are wholly irrelevant. 35 U.S.C. § 133 does *not* control in this situation because it applies only where there *is* failure to prosecute within six months and the issue we are deciding is whether there *was* such failure. *If* our decision is affirmative on that issue, then the application falls within section 133; if it is negative, the section does not apply at all. Therefore *on the issue* the section is irrelevant. To utilize it in deciding the issue before us is to indulge the logical fallacy of *petitio principii,* or begging the question.

But to get back to what the existing practice is. MPEP 706.07(e) says, in part (my emphasis):

"The Examiner may withdraw the rejection of *finally* rejected claims *whenever* he deems the conditions appropriate for such action. If, for example, new facts or reasons are presented such as to *convince the Examiner* that the previously rejected claims are in fact allowable, then the *final* rejection *should be withdrawn.*

\*    \*    \*    \*    \*    \*

"When a final rejection is withdrawn, all amendments filed after the final rejection are ordinarily entered."

This is my answer to the majority opinion's statement that the examiner here did not have the "authority" to do what he did because that authority (assumed to be but actually not authority to "revive") "is retained by the Commissioner under Patent Office Rule 137."

Another significant paragraph showing what is the practice is MPEP 1101.01 (n), as follows (my emphasis):

"If *claims are suggested* in an application near the end of the statutory period running against the case, and the time limit for making the claims extends *beyond the end of the period,* such claims will be admitted if filed within the time limit *even though outside the six months' period AND EVEN THOUGH NO AMENDMENT WAS MADE RESPONSIVE TO THE OFFICE ACTION OUTSTANDING AGAINST THE CASE AT THE TIME OF SUGGESTING THE CLAIMS.* However, if the suggested claims are not thus made within the specified time, the case *becomes* abandoned in the absence of a responsive amendment filed within the six months' period." Rule 203(c).

Therein I see a clear recognition of what this court held in Bain et al. v. Hasselstrom et al. I deem the majority decision to be inconsistent with the spirit if not the letter of this recognized Patent Office practice.

But it seems to me that the complete answer to the entire majority position and to the erroneous position taken by the board is in MPEP 711.03(a) which reads (my emphasis):

"711.03(a) HOLDING BASED ON INSUFFICIENCY OF RESPONSE

"Applicant may deny that his response was incomplete.

"While the Examiner has no authority to act upon an application

in which *no action* by applicant was taken *during* the statutory period, he *may reverse* his holding as to whether or not an amendment *received during such period* was responsive and act on a case of such character which he has *previously held abandoned. THIS IS NOT A REVIVAL OF AN ABANDONED APPLICATION BUT MERELY A HOLDING THAT THE CASE WAS NEVER ABANDONED."* See also 714.03.

I cannot say more than that. The section fits the present situation like the proverbial glove. But, since the appellant put pivotal emphasis on that section, I am at a loss to understand why there is no mention of it in the majority opinion. It is clear to me that if the majority decision as now expressed is to govern the practice, then changes are certainly going to be required in the Manual because the examiner is no longer going to be authorized to give thoughtful reconsideration to his erroneous, sometimes hasty, first responses and correct them by withdrawing or otherwise undoing erroneous holdings of abandonment.

If the examiner's first word is the last word on abandonment, as the majority now seems to hold,[2] then I do not see how any tribunal, including this court, can ever correct it.

I think the decision below must be reversed to maintain the present salutary practices in the Patent Office.

SMITH, Judge (concurring).

The majority opinion reaches what I consider to be the proper result in this case and I fully agree with it. The purpose of this concurring opinion is to point out wherein I disagree with the views expressed in the dissenting opinion. To do so requires but a brief recital of facts which are not discussed in the dissenting opinion but which in my opinion make 35 U.S.C. § 133 determinative of the issue.

After the final rejection of June 19, 1959, Lorenz submitted an amendment on December 7, 1959. This amendment was not *entered.* This is clear from the examiner's letter of December 23, 1959, which states:

"The amendment dated December 7, 1959 has been considered. *If and when requested, the amendment will be entered* for purposes of appeal only." [Emphasis added.]

Thus, on December 23, 1959, more than 6 months after the final rejection, *there was no responsive amendment* entered in the case. Appellant might well have requested entry of the amendment for purposes of appeal but in order to prevail presumably would have been required to show to the satisfaction of the Commissioner that the delay in so requesting its entry "was unavoidable." Instead, this record shows that appellant did nothing. Thus, it seems to me that 35 U.S.C. § 133 is controlling. Under these circumstances, applicant had *not* prosecuted the application within 6 months from the date of the final rejection and this section of the statute requires that in such case the application "shall be regarded as abandoned by the parties thereto." The abandonment stands "unless it be shown to the satisfaction of the Commissioner that such delay was unavoidable." It is clear from the record here that appellant made no such showing.

There is no provision in Title 35 U.S.C. which authorizes the *sua sponte* revival by the Patent Office of an application which has become abandoned under 35 U.S.C. § 133. Section 133 authorizes revival of such an abandoned application only upon a showing "to the satisfaction

2. The majority opinion says (p. 890):
"* * * *since the clear import of the examiner's letter* of December 23, 1959 *was* that the proposed amendment of December 7, 1959, did not constitute a complete and proper response to the examiner's final action of June 19, 1959, *and since appellant did not file an appeal* within the six month statutory time period, we agree with the board that the Lorenz application is abandoned."

of the Commissioner" that the delay was unavoidable. There is no such showing here.

It seems to me that it but confuses the issue to concern ourselves with the respective authority of the examiner and the Commissioner in this situation. The fact is that the statute itself requires a showing of unavoidable delay to overcome the abandoned status of an application where the abandonment results from the failure of the applicant to respond timely to an office action.

Likewise I find it irrelevant to discuss the relative position of the parties in an interference proceeding. Abandoning an application under the conditions specified in section 133 may be some evidence of an intent either to abandon the invention or to conceal it, within the meaning of 35 U.S.C. § 102(c) and (g).

There is a public interest not only in awarding a patent to the first inventor but also in not awarding it to one who has by abandonment of his patent application taken a first step in perhaps depriving the public of knowledge of his invention. In such a situation the reasoning in Mason v. Hepburn, 13 App.D.C. 86, 95–96 (1898), seems to be particularly appropriate. The court stated:

> "Considering, then, this paramount interest of the public in its bearing upon the question as presented here, we think it imperatively demands that a subsequent inventor of a new and useful manufacture or improvement who has diligently pursued his labors to the procurement or a patent in good faith and without any knowledge of the preceding discoveries of another, shall, as against that other, who has deliberately concealed the knowledge of his invention from the public, be regarded as the real inventor and as such entitled to his reward.
>
> \* \* \* \* \* \*
>
> "The true ground of the doctrine, we apprehend, lies in the policy and spirit of the patent laws and in the nature of the equity that arises in favor of him who gives the public the benefit of the knowledge of his invention, who expends his time, labor, and money in discovering, perfecting, and patenting, in perfect good faith, that which he and all others have been led to believe has never been discovered, by reason of the indifference, supineness, or wilful act of one who may, in fact, have discovered it long before."