*Lester v. McFaddon,* 415 F.2d 1101, 1107 (4 Cir.1969) (footnotes omitted).

In holding that our decision regarding Rule 810 applies only prospectively, we do not deprive Reminc of the benefit of its foresight. As we have noted in prior cases, "In the Supreme Court, the prospective rule has usually been applied in the case in which it is first announced." *United States v. Allen,* 542 F.2d 630, 634 (4 Cir.1976), *cert. denied,* 430 U.S. 908, 97 S.Ct. 1179, 51 L.Ed.2d 584 (1977). Although "not an inevitable requirement", *id.,* application to the instant case is the better practice so as to avoid rendering a merely advisory opinion.[16] To require a remand in this case, we expect, will work only a minimum disruption; we are aware of no other cases involving a like challenge to "clearly erroneous" review ac-

tually raised in a bankruptcy proceeding prior to the decision in *Marathon Pipeline.* In any case reviewed by a district court after December 24, 1982, the standard of review is no longer the "clearly erroneous" standard.[17]

Accordingly, we remand this case to the district court for reconsideration of its disposition of the appeal from the bankruptcy court. On remand the district court will be free to hear such evidence as it believes necessary for resolution of the issues involved. In its review of the bankruptcy proceedings, the district court will be guided by the provisions of the district court's local rule adopted in compliance with § (e)(2)(B) of Order No. 3 of the Circuit Council of this circuit, at least until such time as Congress may prescribe a different scope of review.

VACATED AND REMANDED.

**EASTMAN KODAK COMPANY,**
Appellant,

v.

**Gerald J. MOSSINGHOFF, Commissioner of Patents and Trademarks, Appellee.**

No. 82–1349.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1982.

Decided April 14, 1983.

---

Roberts B. Larson, Arlington, Va. (Thomas P. Sarro, Brewster B. Taylor, Larson & Taylor, Arlington, Va., on brief), for appellant.

\* Honorable Walter E. Black, Jr., United States District Judge for the District of Maryland, sitting by designation.

1. Kodak moved under Fed.R.Civ.P. 60(b) for relief from the dismissal order. The district court denied that motion on April 16, 1982.

2. Kodak did not name Xerox as a party in this suit.

Fred E. McKelvey, Associate Sol., U.S. Patent and Trademark Office, Washington, D.C. (Joseph F. Nakamura, Solicitor, U.S. Patent and Trademark Office, Washington, D.C., on brief), for appellee.

Before SPROUSE and ERVIN, Circuit Judges, and BLACK,\* District Judge.

SPROUSE, Circuit Judge:

Eastman Kodak Company (Kodak) appeals from an order of the district court dismissing Kodak's action against Gerald J. Mossinghoff, Commissioner of Patents and Trademarks (Commissioner), for lack of subject matter jurisdiction.[1] Kodak sought review in the district court of a decision rendered by the Commissioner in a patent reissue proceeding. While the district court's dismissal order is cursory, we perceive the rationale of the district court to be that the Commissioner's decision was not a final agency action immediately subject to judicial review. We agree and affirm.

This suit arose from a patent dispute between Xerox Corporation (Xerox)[2] and Kodak. Each company had obtained a patent relating to a document copier, but the particular inventions claimed by each were different. Sometime after both patents were issued, Xerox filed an application with the Patent Office to have its patent reissued to include additional claims,[3] some of which were identical to claims contained in Kodak's patent. Kodak filed with the Patent Office a protest to Xerox's reissue application contending that Xerox had abandoned its application in failing to comply with the time requirements governing reissue applications. The Patent Office denied the protest. The Patent Office also initiat-

3. A patent application must include a written description of the invention and conclude with a claim or claims "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention...." 37 C.F.R. §§ 1.51, 1.71–1.75 (1982).

ed interference proceedings, proceedings which are separate from reissue proceedings, to determine the priority of invention as between Xerox's reissue application and Kodak's patent. The abandonment question properly could be considered anew in the interference proceedings, which were pending at the time Kodak filed this suit. It is the adverse administrative decision on the abandonment issue rendered in the reissue proceedings that Kodak appealed to the district court.

The issues presented in this appeal can be best understood in light of the relevant administrative procedural rules governing reissue and interference proceedings in the Patent Office, and their application in this case. If a patentee discovers an error in his patent, he may apply for a "reissue" patent to correct the error. 35 U.S.C. § 251 (1976).[4] The application is examined *ex parte* by a patent examiner. 35 U.S.C. §§ 131, 251 (1976). If the examiner rejects the application, the applicant may ask the examiner to reconsider his decision. 35 U.S.C. §§ 132, 251 (1976). The applicant can appeal a second rejection to the Patent Office's Board of Appeals (35 U.S.C. § 134 (1976)), and may seek judicial review of an unfavorable decision of the Board, 35 U.S.C. §§ 141–145 (1976).

Although reissue proceedings are *ex parte,* any member of the public has a limited right to protest a reissue application. 37 C.F.R. § 1.291 (1982).[5] If the reissue examiner denies a protest, the protestor may file a petition with the Commissioner to review the examiner's decision. 37 C.F.R. § 1.181 (1982). There is, however, no specific provision in the patent statutes or rules of practice permitting a protestor to seek review by the Board of Appeals, or in the federal courts, of an unfavorable decision of the Commissioner. *See PIC Inc. v. Prescon Corp.,* 485 F.Supp. 1302, 1310 (D.Del.1980).

Interference proceedings are initiated when the Patent Office discovers that two individuals applied for a patent on the same invention, or that an individual applied for a patent on an invention which was already patented. 35 U.S.C. § 135 (1976). Unlike reissue proceedings, interference proceedings are *inter partes,* and are conducted before the Board of Patent Interferences, a reviewing board separate from the Board of Appeals. *Id.* When the Patent Office declares an interference, *ex parte* proceedings relating to a patent application involved in the interference proceedings normally are suspended. 37 C.F.R. § 1.212 (1982).

The principal issue the Board of Patent Interferences must decide is priority of invention as between the parties. 37 C.F.R. § 1.201 (1982). The Board also may decide issues which have been determined to be ancillary to the priority issue. 37 C.F.R. § 1.258 (1982). The winner of the interference generally is entitled to a patent containing claims directed to the subject matter of the interference. The losing party may seek judicial review of the Board's decision. 35 U.S.C. §§ 141–144, 146 (1976).

Xerox applied for the reissue patent on July 2, 1979. Thereafter, Kodak filed a protest with the examiner of the reissue application principally alleging that Xerox had "abandoned" the reissue application, and that the Patent Office therefore must deny the application.[6] 37 C.F.R. § 1.291 (1982). The reissue examiner, on November 10, 1981, denied Kodak's protest, ruling that Xerox had not abandoned its reissue application. The examiner also noted that steps would be taken toward initiating an interference between Xerox's reissue application and Kodak's patent.

On November 30, 1981, Kodak filed a petition with the Commissioner to set aside

---

4. The Patent Office processes reissue applications in generally the same manner as it processes original patent applications. 37 C.F.R. § 1.176 (1982).

5. An individual can learn of reissue applications in the *Official Gazette,* a publication in which the Patent Office announces all reissue applications. 37 C.F.R. § 1.11(b) (1982).

6. Kodak specifically alleged that Xerox's reissue application should not issue as a patent because it had been abandoned by operation of law for failure of Xerox to respond to a final rejection imposed by the Patent Office within the time provided by the patent statutes, 35 U.S.C. § 133 (1976), and the Patent Office Rules of Practice, 37 C.F.R. § 1.135 (1982).

the examiner's holding on abandonment and to declare the Xerox reissue application abandoned by operation of law. 37 C.F.R. § 1.181 (1982). On the same day, the Board of Patent Interferences declared an interference between the Xerox reissue application and the patent owned by Kodak. Kodak eventually raised the issue of abandonment in the interference proceedings as an issue ancillary to the priority issue. 37 C.F.R. § 1.258 (1982).[7]

On December 15, 1981, the Commissioner's delegate[8] denied Kodak's petition to set aside the examiner's abandonment decision rendered in the reissue proceedings, and on February 5, 1982, denied a request for reconsideration. Kodak filed this action in district court on February 10, 1982, seeking review of the Commissioner's decision that Xerox had not abandoned its reissue application.[9]

When the Commissioner denied Kodak's petition and request for reconsideration, he was unaware that the Board of Patent Interferences had declared an interference between Xerox's reissue patent and Kodak's patent. Upon learning of the interference proceedings, the Commissioner vacated his decisions, and entered a new order dismissing Kodak's petition without prejudice to raise the issue of abandonment in the interference proceedings.[10] This action was taken on February 16, 1982, six days after suit was filed in district court.

Kodak argues that the Commissioner's decision finding against Kodak on the abandonment issue is a final agency action immediately subject to judicial review. 5 U.S.C. § 704 (1976).[11] We disagree and hold that the challenged agency action was not final under the circumstances of this case.

■ Cases dealing with judicial review of administrative actions have interpreted the finality element in a pragmatic way. *See, e.g., Frozen Food Express v. United States,* 351 U.S. 40, 76 S.Ct. 569, 100 L.Ed. 910 (1956); *Columbia Broadcasting System v. United States,* 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942). The purpose of the finality requirement is to prevent the disruption of the orderly administrative process through avoidance of premature judicial intervention until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. *See Abbott Laboratories, Inc. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–1516, 18 L.Ed.2d 681 (1967); *Port of Boston Marine Terminal Assoc. v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209–210, 27 L.Ed.2d 203 (1970); *Klein v. Commissioner of Patents of the United States,* 474 F.2d 821, 825 (4th Cir. 1973). Considerations relevant to a determination of finality include whether the agency action is definitive, whether the action has direct or immediate legal force or practical effect on the complaining party, and whether immediate judicial review would serve efficiency or enforcement of the act under which the agency operates. *See FTC v. Standard Oil Co. of Calif.,* 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980); *United States v. Storer Broadcast-*

7. The issue of whether a party abandoned a patent application which is related to the subject matter of an interference has been determined to be ancillary to priority. *See Lorenz v. Finkl,* 333 F.2d 885, 891, 51 Cust. & Pat.App. 725 (Cust. & Pat.App.1964). Kodak did not raise the abandonment issue in the interference proceedings, however, until after the district court entered its dismissal order in this case.

8. The Commissioner may delegate to appropriate Patent Office officials the determination of petitions filed under 37 C.F.R. § 1.181 (1982).

9. Kodak's complaint also sought a preliminary injunction restraining any further proceedings in the Patent Office involving the Xerox reissue application until the district court decided the abandonment issue.

10. At the time of oral argument, the interference proceeding was still pending.

11. This section of the Administrative Procedure Act provides in pertinent part:

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

*ing Co.,* 351 U.S. 192, 76 S.Ct. 763, 100 L.Ed. 1081 (1956).

In *Klein v. Commissioner of Patents of the United States,* 474 F.2d 821 (4th Cir. 1973), we considered the finality of an agency decision relating to the subject matter of a pending interference proceeding. In *Klein,* Dyer had filed a reissue application to include additional claims in its original patent. Some of the new claims were identical to claims contained in patents which had been issued to Klein and Poage, the plaintiffs. The Examiner of Patent Interferences eventually declared interferences between Dyer's reissue application and the plaintiffs' patents. The plaintiffs moved to dissolve the interferences on the ground that the interfering claims were not patentable to Dyer. The examiner denied the motion. The plaintiffs thereafter filed a petition with the Commissioner seeking review of the denial. The Commissioner's delegate denied the petition, and denied a request for reconsideration. We held that the denials of the motion to dissolve the declarations of the interferences did not constitute final agency actions subject to immediate judicial review. We stated that the only final agency action in an interference proceeding is a determination of priority of invention.[12] *Accord Phillips Petroleum Co. v. Brenner,* 383 F.2d 514, 517 (D.C. Cir.1967); *Dueltgen v. Parker,* 579 F.2d 638, 639 (Cust. & Pat.App.1978). Any other action of the Patent Office relating to the subject matter of the interference proceeding, even if it be a decision by the Commissioner, is not final agency action, and therefore not subject to judicial review until the issue of priority has been determined.

As in *Klein,* in the case *sub judice* there is a pending patent interference proceeding. The agency action for which Kodak seeks judicial review involves a question, which under the circumstances of this case, is properly to be decided in the pending interference proceedings according to Patent Office Rules of Practice.[13] Indeed, Kodak has raised the abandonment issue in those proceedings. Since the Patent Board of Interferences had not yet decided the issue of priority at the time this suit was filed, Kodak prematurely sought judicial review of the abandonment issue. In accord with *Klein,* that issue is not subject to judicial review until the Board has decided priority as between Xerox's reissue application and Kodak's patent.[14]

Kodak would have us distinguish the immediate case from *Klein* on the ground that the abandonment issue was initially raised in the reissue proceedings. The issue in *Klein* for which judicial review was sought was raised initially in the interference proceedings. Kodak asserts that reissue proceedings progress independently from interference proceedings, and thus the fact that an issue decided in a reissue proceeding could be considered anew in an interference proceeding should not affect the decision's finality for purposes of judicial review. Kodak further argues that the abandonment issue has been finally decided since Kodak appealed the abandonment decision to the fullest extent possible in the reissue proceedings, with the head of the agency deciding the issue.

While it is true that interference and reissue proceedings are separate proceedings conducted by different Patent Office personnel, the two proceedings are not necessarily independent of each other. Interference and reissue proceedings may interact when the Patent Office decides a particular patent dispute, as in the immediate case. Xerox's reissue application initiated reissue proceedings to determine the appli-

---

12. 35 U.S.C. § 135 (1982), which relates to interferences, provides in part as follows:

   The question of priority of invention shall be determined by a board of patent interferences ... whose decision, if adverse to the claim of an applicant, shall constitute the final refusal by the Patent Office of the claims involved.

13. 37 C.F.R. § 1.258(a) (1982); *see Lorenz v. Finkl,* 333 F.2d 885, 887–88, 51 Cust. & Pat. App. 725 (Cust. & Pat.App.1964).

14. We do not address the issue of when, if ever, a protestor can obtain judicial review of the Commissioner's denial of his protest petition in reissue proceedings.

cation's validity. Kodak protested Xerox's reissue application in those proceedings raising, *inter alia,* the issue of abandonment and bringing to the attention of the reissue examiner the possible interference between Xerox's reissue application and Kodak's patent. The Patent Office thereafter declared an interference, which by regulation effectively suspended the reissue proceedings.[15] The responsibility for resolving the patent dispute between Xerox and Kodak, therefore, was transferred from the reissue examiner to the Board of Patent Interferences. Any agency action concerning the abandonment issue in the reissue proceedings was not definitive in this case; the issue properly could be considered afresh in the interference proceedings. *See Myers v. Feigelman,* 455 F.2d 596, 600 (Cust. & Pat. App.1972) (Commissioner's decision is not binding on the Board of Patent Interferences); *Application of Dickinson,* 49 Cust. & Pat.App. 951, 299 F.2d 954, 958 (Cust. & Pat.App.1962) (Commissioner cannot usurp the functions or impinge upon the jurisdiction of the Board of Patent Interferences). Thus, the reissue proceedings and interference proceedings did not progress independently, but rather interacted in the ongoing effort of the Patent Office to resolve the dispute between Xerox and Kodak. The fact that the issue for which Kodak seeks judicial review was raised initially in the reissue proceedings, therefore, is not a distinction bearing on *Klein*'s precedential effect on this case.

We also are not persuaded by Kodak's contention that since it appealed the abandonment decision to the fullest extent possible in the reissue proceedings, it is a final agency action immediately subject to judicial review. Even assuming *arguendo* that Kodak had exhausted its administrative remedies on the abandonment question, that does not *ipso facto* mean that the decision is a final agency action. *See FTC v. Standard Oil of Calif.,* 449 U.S. 232, 241,

243, 101 S.Ct. 488, 493, 495, 66 L.Ed.2d 416 (1980). In *Standard Oil,* a decision by the head of the agency, which may well have exhausted plaintiff's administrative remedies as to the particular issue decided, was found not to be final agency action. Thus, exhaustion of review of the abandonment issue through the Commissioner in the reissue proceedings does not necessarily entitle Kodak to immediate judicial review of the abandonment decision.

In any event, we do not believe that the Commissioner's inadvertent error in this case should provide the basis for judicial review of the abandonment decision. In accordance with Patent Office procedure, the Commissioner's decision Kodak asks us to review should never have been rendered. The interference proceeding was pending, and all actions in the reissue proceedings by regulation were suspended, at the time the Commissioner made his decision. Indeed, once the Commissioner discovered his error, he vacated his decision[16] and ordered Kodak's petition dismissed without prejudice to raise the abandonment issue in the interference proceedings. Denying immediate review in this case, therefore, provides the Patent Office with an opportunity to correct its own mistakes. *See FTC v. Standard Oil Co. of Calif.,* 449 U.S. at 242, 101 S.Ct. at 494.

Kodak contends that it will suffer serious hardship unless the abandonment issue is judicially reviewed immediately. Kodak argues that it will be subjected to great trouble and expense by being forced to prosecute the abandonment issue all over again in the interference proceeding. The Supreme Court, however, recently reiterated that "the expense and annoyance of litigation is 'part of the social burden of living under government.'" *FTC v. Standard Oil Co. of Calif.,* 449 U.S. at 244, 101 S.Ct. at 495. Furthermore, this burden is different in kind and legal effect from the burdens which have been considered in determining

---

15. 37 C.F.R. § 1.212 (1982).

16. Since we hold that the district court lacked subject matter jurisdiction on the basis that the Commissioner's decision was not final agency action, we find it unnecessary to consider the possibility that this suit is moot because the decision sought to be reviewed has been vacated.

final agency action. *Id.* at 242, 101 S.Ct. at 494.

In summary, we hold that the Commissioner's decision on the abandonment issue is not a final agency action subject to immediate judicial review. The abandonment issue can properly be considered anew in the interference proceeding. *See Klein, supra.* The Commissioner's decision did not definitively decide the abandonment issue, and the patent dispute between Xerox and Kodak has yet to be resolved. Immediate review would serve neither efficiency nor enforcement of the Patent Act, but would tend to interfere with the proper functioning of the agency and to burden the courts. Finally, judicial intervention at this time would lead to piecemeal review which at least is inefficient, and may be unnecessary depending on the outcome of the interference proceedings. *See FTC v. Standard Oil Co. of Calif.,* 449 U.S. at 242, 244 n. 11, 101 S.Ct. at 494, 495 n. 11; *Bally Mfg. Corp. v. Diamond,* 629 F.2d 955, 960 (4th Cir.1980); *Lee Pharmaceuticals v. Kreps,* 577 F.2d 610, 619 (9th Cir.1978).

AFFIRMED.