52 CCPA

**Davis R. DEWEY, II, Appellant,**

v.

**Elliott J. LAWTON, Appellee.**

**Patent Appeal No. 7339.**

United States Court of Customs
and Patent Appeals.

July 1, 1965.

Dos T. Hatfield, Washington, D. C., Henry C. Nields, Burlington, Mass., for appellant.

Harry L. Kirkpatrick, Boston, Mass. (A. Cohen, Robert S. Friedman, Waterford, N. Y., Frank L. Neuhauser, Washington, D. C., of counsel) for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

The question to be decided in this appeal is whether appellee Lawton unlawfully concealed his invention within the meaning of 35 U.S.C. § 102(g). Lawton filed his patent application[1] on January 11, 1955, and was named junior party in an interference involving that application and a patent[2] to appellant Dewey. Dewey's patent issued on an application[3] which was filed March 18, 1954. Dewey took no testimony and relies upon the filing date of his application as establishing a constructive reduction to practice of the subject matter de-

1. Serial No. 481,152 for "Process Irradiating Flat Stock Organic Polymers."

2. No. 2,858,442, issued October 28, 1958, entitled "Apparatus for Increasing the Uniformity of Dose Distribution Produced by Electron Irradiation."

3. Serial No. 417,098.

fined by the counts. Lawton took testimony and introduced other evidence in an attempt to establish actual reduction to practice prior to Dewey's filing date.

The gist of the invention of the counts was summarized as follows by the Board of Patent Interferences:

> The involved invention is concerned with effective and efficient utilization of the energy of an electron beam in unformly irradiating material such as tape. Passing a single layer of tape through an electron beam was wasteful of energy because only a small portion thereof was absorbed in the material. Passing a stack of layers through the beam resulted in non-uniformity from top to bottom of the stack because of the energy field configuration. The applications of both parties show as an exemplification of the invention the directing of an electron beam at a roll of tape as the tape is drawn off the roll at a constant linear velocity. Except for the initial outer layers, to the thickness of penetration of the beam, each portion of the tape in the underlayers would come into the energization field and progress through it in the same way as every other portion.

Of the counts in interference, only 1, 2 and 3 are involved in this appeal, the board having awarded priority to Dewey on the remaining counts. Count 1 seems illustrative and reads:

> 1. Apparatus for increasing uniformity of dose produced by electron irradiation in a product which is divisible into thin layers, comprising in combination: means for creating a stream of high energy electrons and means for conducting such a product through said stream in such a manner that, during the irradiation of any point in such product, the normalized product thickness intervening between such point and the electron source assumes a sequence of values, which sequence is substantially the same for all points in the product.

On the basis of the testimony and documentary evidence introduced on behalf of Lawton, the board held that Lawton had proved actual reduction to practice in May of 1953. Dewey does not controvert that holding, but urges that the board erred in failing to find that Lawton had concealed the invention of the counts. Section 102(g) provides that "A person [in this case, Dewey] shall be entitled to a patent unless— * * * before the applicant's invention thereof the invention was made in this country by another [in this case, Lawton] who had not abandoned, suppressed, or concealed it. * * *" Thus, since the board has found that Lawton was the prior inventor of the subject matter of the counts, Dewey is manifestly not entitled to his patent as to those counts unless he can show that Lawton concealed the invention within the meaning of section 102 (g).

Resolution of the issue here requires consideration of two distinct but related questions. The first of these involves the time period during which Lawton's activities are to be evaluated. While the board found, as we have indicated, that Lawton actually reduced to practice in May 1953, Lawton's amended preliminary statement in the interference proceedings alleged a date of April 1951. Dewey contends that the activities of Lawton bearing on concealment must be evaluated over the period from April 1951 to Lawton's filing date, a span of some three and one-half years. Lawton, on the other hand, argues that the pertinent period is from May 1953 to the filing date, some twenty months. The board agreed with Lawton, and so do we.

■ As Rivise & Caesar point out, in 1 Interference Law and Practice § 86 (1940), "The purpose of requiring preliminary statements from the parties to an interference is to obtain from them an honest statement of the essential facts and dates upon which they may have to rely to prove priority of invention." Accordingly, the parties are estopped from proving any dates of invention which are prior to those set up in their statement.

Op. cit. supra, § 98. Obviously, however, the estoppel does not extend to *subsequent* events; the party may prove a date of actual reduction to practice which is later than the earliest date alleged in his preliminary statement. As the board in the instant case put it,

> * * * the Preliminary Statement, though verified and somewhat in the nature of a pleading, is not regarded as evidence but as merely setting dates earlier than which evidence is not effective time-wise. Consequently the particular statements in the Preliminary Statement are not regarded as effective admissions except for the setting of limiting dates. * * *

We will not, therefore, in determining the question of concealment, consider activities occurring prior to the date of actual reduction to practice found by the board. Nor will we re-examine the record in an attempt to find actual reduction to practice prior to the date established by the board. As regards concealment, the time between the date alleged in the preliminary statement and the date of actual reduction to practice is immaterial. Stresau v. Ipsen, 77 F.2d 937, 22 CCPA 1352.

The second question involves the oft-repeated rule of concealment law, "that the party against whom the forfeiture is urged must have been stirred or spurred into renewed activity by the knowledge that a rival has entered the field." 4 Rivise & Caesar, op. cit. supra, § 803. See, e. g., Mason v. Hepburn, 13 App.D.C. 86 (1898), Stresau v. Ipsen, supra. In the instant case, there is admittedly no showing that Lawton was spurred into renewed activity and filing his patent application by learning of Dewey's entry into the field. In this regard the board commented:

> There is no evidence that Lawton was spurred into activity by knowledge of Dewey's entry into the field. This has been an express requirement or acknowledged ingredient in the decision in all of the interference cases raising the Mason v. Hepburn doctrine of which we are aware. * * * [4]

Dewey urges that the board erred in holding "that evidence that Lawton was spurred into activity by knowledge of Dewey's entry into the field is *necessary* in order to prove concealment." In our opinion, the board committed no reversible error. First, the board did not hold that spurring is essential to a finding of concealment in every case, regardless of other circumstances. The board merely stated that it knew of no case in which concealment had been found absent spurring. The implication is, of course, that the board considered spurring to be an extremely important factor bearing on the lawfulness of an alleged concealment. And we agree; but as this court stated in Gallagher v. Smith, 206 F.2d 939, 41 CCPA 734:

> Smith has argued that the doctrine of equitable estoppel has no application until and unless there is evidence of the fact that the party alleged to have concealed or suppressed an invention was incited to activity as a result of being appraised that a rival had entered the field with respect to the same invention. This view was supported by the board in its decision. We are not necessarily in agreement with such reasoning. Such a condition is not an absolute prerequisite to proper application of the doctrine, though the existence of such a circumstance carries with it persuasive value. In a proper case, we would not hesitate to apply the doctrine where the proof indicates deliberate suppression and concealment without more. In the instant case, appellant fails to show that Smith was

---

4. A recent article seems to bear out the board's conclusion that there has been no reported case in which unlawful concealment was found *without* spurring. See

Crews & Crews, "Introduction to Interference Law and Practice," 46 J.Pat.Off. Soc'y 755, 766 (1964).

"spurred into activity" by knowledge of appellant's work. Such factor has been taken into consideration in our study of the case.

We wish to reaffirm the position stated in Gallagher v. Smith. While we realize that in the great majority of cases it would be difficult, and often well-nigh impossible, to make a satisfactory showing of unlawful concealment absent proof of spurring, we think it would be extremely unwise to hold spurring an essential element in *all* cases. For it does not unduly tax the imagination to hypothesize cases wherein the other proof of deliberate concealment is so strong that a showing of spurring, if available, would be superfluous.

 What the board effectively held, in the present case, is that minus a showing of spurring, the remaining record evidence is far too meager to support a finding of deliberate concealment on the part of Lawton. We agree. Mere concealment, of course, is not per se unlawful. Indeed, as the board pointed out, "Concealment of an invention at least until an application for patent therefor is filed is the normal behavior of the cautious inventor, and in itself, if not continued for an unreasonably long time, is not reprehensible and not fatal to a priority case in an interference proceeding." It is only where there is a *deliberate* concealment, *inconsistent* with an intent ultimately to file a patent application within a reasonable time, that section 102(g) operates to deprive the actual prior inventor of his right to a patent. E. g., Schnick v. Fenn, 277 F.2d 935, 47 CCPA 1174. See generally 4 Rivise & Caesar, op. cit. supra, §§ 797–805.

The record as a whole fails to establish deliberate concealment on the part of Lawton. On July 29, 1953, within three months of his actual reduction to practice, Lawton wrote a formal letter to the director of the General Electric Research Laboratory (where Lawton was employed), disclosing the invention of the counts. The letter was shortly thereafter transmitted to the Research Laboratory's patent counsel, who assigned the disclosure to an assistant patent attorney for investigation and preparation of a patent application, and the application was subsequently filed in what appears to be due course. We think this sequence of events evidences a continuing interest in obtaining patent protection for Lawton's invention at the earliest practicable date.

The record also shows that General Electric personnel engaged in further testing and refinement of Lawton's invention for more than a year after the May 1953 reduction to practice. In short, none of the activities over the span of approximately one and one-half years from reduction to practice until filing evidence an intent to conceal Lawton's invention and thus reap the benefits of withholding public disclosure.

The appealed decision is accordingly affirmed.

Affirmed.