59 F.3d 182
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 NATIONAL PRESTO INDUSTRIES, INC., Plaintiff-Appellee,
v.
BLACK & DECKER (U.S.) INC., Defendant-Appellant,
and
Better Mousetraps, Inc., Third Party Defendant-Appellant.
 Nos. 92-1388, 92-1476.
 United States Court of Appeals, Federal Circuit.
 June 20, 1995.
 
 Before NEWMAN, RADER, and SCHALL, Circuit Judges.
 PAULINE NEWMAN, Circuit Judge.
 
 
 1
 Black & Decker (U.S.) Inc. appeals the judgment of the United States District Court for the Northern District of Illinois, holding that Black & Decker infringed claims 7-14 of United States Patent No. 4,884,755 (the '755 Patent), owned by National Presto Industries, Inc. (Presto). Better Mousetraps, Inc. (BMI), owner of United States Patent No. 4,856,718 (the '718 Patent), appeals the judgment that claims 1 and 15 of the '718 Patent are invalid due to prior invention by Presto.[1] Both judgments are affirmed.
 
 
 2
 * JURISDICTION
 
 
 3
 As a threshold matter, Presto argues that BMI's appeal was filed out of time. Presto states that BMI timed the filing of its appeal from the incorrect choice among a series of judgment orders.
 
 
 4
 The district court had issued judgment orders as the various issues of the trial were resolved. On March 11, 1992 the district court entered a judgment order on the jury verdict that Black & Decker's device infringed claims 7-14 of Presto's '755 Patent. On March 18, 1992 the district court entered a judgment order on the jury's answer to an interrogatory that Presto had not abandoned, suppressed or concealed its invention of its '755 Patent. On March 26 the district court entered a judgment order on the jury verdict of damages payable by Black & Decker to Presto. On May 21 the court denied BMI's motion for judgment notwithstanding the verdict and for a new trial on whether Presto abandoned, suppressed or concealed its prior invention, and for judgment notwithstanding the verdict on Black & Decker's infringement of Presto's patent, and ruled on pre-judgment interest.
 
 
 5
 Appeal No. 92-1388 was filed on June 9, 1992 by BMI, from the March 18 and the May 21 judgment orders. On July 24, 1992 the district court entered "final judgment." On July 29, 1992 Black & Decker and BMI filed a joint appeal, No. 92-1476, from this final judgment. The two appeals were subsequently consolidated.
 
 
 6
 Presto argues that the only judgment from which BMI could have appealed is that of March 18, since that judgment disposed of BMI's third party claim by holding that Presto did not abandon, suppress, or conceal its prior invention. Presto states that this was a final judgment on the issue of patent validity, since it disposed of all issues involving BMI. However, Presto states that BMI's appeal of the March 18 judgment was untimely because it should have been filed within ten days thereafter, but instead was filed under an extension of time to file a motion for a new trial, which extension the district court had granted. Presto points out that extensions of time to move for a new trial are not permitted under the Federal Rules. See Fed.R.Civ.P. 6(b), 59. The improper extension of time, argues Presto, requires dismissal of BMI's appeal.
 
 
 7
 BMI states that its appeal was properly timed from the final judgment entered on July 24, and that an action that disposes of some issues while others remain unresolved does not start the clock for filing an appeal unless the court directs that final judgment be entered as provided in Fed.R.Civ.P. 54(b), which states in part:
 
 
 8
 When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and rights and liabilities of all the parties. [Emphasis added.]
 
 
 9
 The district court accompanied its March 18 judgment with the statement that "[j]udgment is entered pursuant to the provisions of Rule 54(b) of the FRCP." This statement does not meet the requirements for an appealable partial judgment, for the district court made no "express determination" of finality as required by Rule 54(b). Indeed, it is apparent that piecemeal appeal was not contemplated by the judge or any party, for the case was in the midst of trial and the March 18 order was one of several judgment orders entered. A judgment that simply enters a jury's special verdict or interrogatory answer is not, without more, an appealable judgment. If the judgment is not appealable, it can not start the time for filing an appeal.
 
 
 10
 Not until the district court completed its rulings, in its July 24 "final judgment", was the '718 Patent declared invalid. Thus, whether the district court had authority to grant an extension of time for filing motions after the March 18 Order is irrelevant. That BMI filed an interim notice of appeal was a matter of caution, not a fatal flaw.
 
 II
 INFRINGEMENT OF THE '755 PATENT
 
 11
 Presto's '755 Patent and BMI's '718 Patent both relate to motor-driven vegetable slicers. In both patents vegetables (or other foodstuffs) are pushed through a chute to contact cutting blades that are mounted on either a rotating plastic cylinder or a rotating frustum of a cone. As the blades slice the vegetables, the slices are drawn into the cylinder or frustum and leave the slicer through the other end. Presto makes a slicer whose brand name is the "SaladShooter," an embodiment of its '755 Patent. Black & Decker, by license under the '718 Patent of BMI, makes a slicer denominated the HSS-60 food processor, with the brand name "Handy Slice 'N Shred."
 
 
 12
 This litigation began with Presto's charge that Black & Decker's HSS-60 infringed claims 7-14 of Presto's '755 Patent. In response Black & Decker did not challenge the validity of the '755 Patent, but argued that the HSS-60 did not infringe the '755 Patent. Our review of the jury verdict of infringement of the '755 Patent is conducted in accordance with the procedures established in Markman v. Westview Instrument Inc., --- F.3d, ----, 34 USPQ2d 1321 (Fed.Cir.1995) (en banc ).
 
 A. Claim Construction
 
 13
 Claim 7 of the '755 Patent is representative:
 
 7. A food processor comprising:
 
 14
 a housing having a first opening for introduction of food products and a second opening for discharging processed food products;
 
 
 15
 a cutting member rotatably mounted within said housing, said cutting member comprising:
 
 
 16
 a plastic hollow blade holder having a central axis of rotation, a closed end having an integrally formed driven member and an open end and a plurality of arcuate wall sections extending from said closed end to said open end and spaced circumferentially about said axis of rotation;
 
 
 17
 at least one metal cutting blade member integrally and permanently molded into said blade holder between said arcuate wall sections and having openings through which processed items pass into the hollow interior of said holder;
 
 
 18
 means on said housing for supporting said blade holder proximate its open end; means for rotatably driving said cutting member whereby food products are
 
 
 19
 processed and discharged through said open end of said holder. [Emphasis added.]
 
 
 20
 In Markman v. Westview this court held that the appellate court must construe, de novo, the meaning and scope of disputed terms in the claims. --- F.3d at ----, 34 USPQ2d at 1329. This court on appeal will interpret the meaning and scope of the claim term as a matter of law. Id.
 
 
 21
 Black & Decker argues that the '755 Patent claims should be interpreted to require a structure distinct from the housing for supporting the open end of the cutting member. Such an interpretation could avoid infringement by the HSS-60, wherein a lip on the housing provides support for the open end of the cutting member. We do not agree with this view. The supporting structure in the '755 Patent is claimed in "means-plus-function" form in claims 7 and 8, and in descriptive form in claim 14. In claim 7 the term is "means on said housing for supporting said blade holder proximate its open end." In claim 8 the term is "housing further having means for supporting the cutting member proximate the second opening of the housing." In claim 14 the term is "support member at the second opening of the housing," not in means-plus-function form. Although different usages in different claims are presumed to have different meanings, Tandon Corp. v. United States Int'l Trade Comm'n, 831 F.2d 1017, 1023, 4 USPQ2d 1283, 1288 (Fed.Cir.1987), and each claim must be construed independently, in this case any difference in the meaning of the supporting means or support member in the several claims does not affect our conclusion.
 
 
 22
 Claims 7 and 8 are written in the means-plus-function form authorized by 35 U.S.C. Sec. 112 p 6. Literal infringement is made out when an accused device performs the function stated in a claim clause written in means-plus-function form, by means of structure, material, or acts described in the specification or an equivalent thereof. Texas Instruments, Inc. v. United States Int'l Trade Comm'n, 805 F.2d 1558, 1562, 231 USPQ 833, 834-35 (Fed.Cir.1986). The supporting means described in the '755 specification is a retaining ring that is attached to ridges in the housing. Presto argues that this description means that the cutting member is directly supported by the retaining ring and indirectly supported by the housing. Black & Decker argues that the '755 claims should be construed to require that the supporting structure on the housing is separate from the housing, and therefore that the claims can not reach Black & Decker's HSS-60 wherein the supporting means is a lip of the housing on which the cutting member rests, while a retaining ring holds the cutting member within the housing. Black & Decker argues that because claim 7 requires a supporting means "on said housing", only a support not attached to the housing can be "on" the housing.
 
 
 23
 We do not share Black & Decker's interpretation of the term "on". Neither the specification nor the prosecution history requires or suggests that the support "on" the housing is a separate entity from the housing. Applying the ordinary meaning of words, a supporting means "on" a housing may be integral with or attached to the housing.[2] See ZMI Corp. v. Cardiac Resuscitator Corp., 844 F.2d 1576, 1579, 6 USPQ2d 1557, 1560 (Fed.Cir.1988) ("terms of a claim will be given their ordinary meaning, unless it appears that the inventor used them differently.") Indeed, both sides acknowledge that being "on" does not necessarily mean separate entities.
 
 
 24
 We conclude as a matter of law, see Markman, supra, that the correct interpretation is that the supporting means on the housing need not be a separate entity from the housing.
 
 B. Infringement
 
 25
 The supporting means clause of claim 7 is met literally by the accused HSS-60 if the same function is performed by the same or an equivalent structure to that described in the specification. Texas Instruments, 805 F.2d at 1562, 231 USPQ at 834-35. See D.M.I., Inc. v. Deere & Co., 755 F.2d 1570, 1574, 225 USPQ 236, 238 (Fed.Cir.1985) ("Sec. 112-6 was written precisely to avoid a holding that a means-plus-function limitation must be read as covering only the means disclosed in the specification").
 
 
 26
 Black & Decker argues that there was insufficient evidence at trial to support the jury's finding of infringement, and that its integral lip support could not reasonably have been found equivalent to the supporting structure shown in the '755 Patent. We review the record to determine whether there was substantial evidence whereby a reasonable jury could have found these supporting structures to be equivalent. At the trial the devices were in evidence and demonstrated to the jury, including testimony based on schematic force diagrams. Dr. Philpott, Presto's expert witness, compared the support means of an embodiment of the '755 Patent with the support means of the HSS-60. He testified and demonstrated that the support means of the HSS-60 performed the same function in substantially the same way as the support means described in the specification, in that both structures mechanically supported the blade holder.
 
 
 27
 Black & Decker presented evidence that some vegetable slicers of the prior art use the same supporting structure for the blades as does the HSS-60, and argued that since its supporting structure was in the prior art it could not be reached as an equivalent, as a matter of law. That is incorrect. An element of the combination, when the element is claimed in means-plus-function form, may be met by the structure described in the specification or by an equivalent structure, which equivalent structure may or may not be known to the art. See Intel Corp. v. United States Int'l Trade Comm'n, 946 F.2d 821, 842, 20 USPQ2d 1161, 1179 (Fed.Cir.1991) ("Claims limitations may, and often do, read on the prior art, particularly in combination patents.") The '755 claims are to a combination of elements that together comprise the patented food processor, and not to the separate parts of the device. It is the combination that is patented. See Panduit Corp. v. Dennison Manufacturing Co., 810 F.2d 1561, 1575, 1 USPQ2d 1593, 1603 (Fed.Cir.) ("Virtually all inventions are necessarily combinations of old elements."), cert. denied, 481 U.S. 1052 (1987) (footnotes omitted).
 
 
 28
 Black & Decker also argues that prosecution history estoppel prevents a finding of infringement under Sec. 112 p 6, relying particularly on the Petroske patent. The Petroske patent was cited during prosecution of the '755 Patent. The patent examiner did not require Presto to restrict its supporting means or support member terms in view of Petroske. On reviewing the record, we do not discern an estoppel based on the prosecution history.
 
 
 29
 We conclude that a reasonable jury could have found infringement, on the correct construction of the claims. The judgment is affirmed.
 
 III
 THE ISSUE OF PRIOR INVENTION
 
 30
 BMI brought a third party claim, charging Presto with infringement of claims 1 and 15 of BMI's '718 Patent. Presto stipulated that it infringed the '718 Patent if the patent were valid, but asserted that the '718 Patent was invalid based on Presto's prior invention of the subject matter as contained in Presto's '755 Patent.
 
 
 31
 BMI and Presto stipulated that the inventions of the '718 and the '755 patents were similar, and that Presto was the first to reduce to practice the invention claimed in BMI's '718 patent. However, BMI argued that Presto had abandoned, suppressed, or concealed its prior invention,[3] since there was a delay of twenty-two months between Presto's reduction to practice and the filing of the '755 patent application. The jury found that Presto had not abandoned, suppressed, or concealed the invention.
 
 A. The Burden of Proof
 
 32
 BMI challenges the jury instruction that Presto had the burden of proving, by a preponderance of the evidence, that it had not abandoned, suppressed, or concealed the invention. BMI argues that since Presto was challenging the validity of BMI's issued patent, Presto had the burden of proving every fact necessary to its defense of prior invention by clear and convincing evidence. By stating the burden as a mere preponderance, BMI argues, the district court deprived the BMI patent of the presumption of validity set in 35 U.S.C. Sec. 282. BMI argues that had the standard imposed on Presto been that of clear and convincing evidence, BMI would have prevailed.
 
 
 33
 Presto responds that if the district court erred at all, it erred in the opposite direction and should have placed the burden of proving invalidity upon BMI. Presto argues that when Presto's prior reduction to practice was conceded by BMI, the BMI patent became presumptively invalid, and the burden shifted to BMI to establish facts to overcome this presumption of invalidity.
 
 
 34
 The district court, having received this conflicting procedural advice from the parties, brought to the issue that most worthy of resources: common sense. It must have been clear to the district court that the PTO erred in issuing two patents on the same invention.[4] Thus the court instructed the jury to decide the question by a preponderance of evidence, applying the same standard of proof that is applied in priority contests in the PTO and the courts. However, the court required Presto to prove by a preponderance of evidence that it had not abandoned, suppressed, or concealed its invention. Presto correctly states that in a priority determination within the PTO, the burden of proving abandonment, suppression, or concealment is on the party raising the challenge, in this case BMI.
 
 
 35
 Generally, the party who establishes that he is the first to conceive and the first to reduce an invention to practice is entitled to a patent thereon. However, the second party to conceive and reduce the same invention to practice will be awarded priority of invention if he can show that the first party to reduce the invention to practice abandoned, suppressed, or concealed the invention.
 
 
 36
 Lutzker v. Plet, 843 F.2d 1364, 6 USPQ2d 1370, 1371 (Fed.Cir.1988). We do not discern harmful error in the placement of the burden, and the standard, of proof on the facts of this case.
 
 B. The Merits
 
 37
 Abandonment, suppression, or concealment is not presumed by mere delay, but is established based on the circumstances. The courts have recognized that an unreasonably long delay provides a basis for an inference of intent to abandon, suppress, or conceal. See, e.g., Peeler v. Miller, 535 F.2d 647, 653-54, 190 USPQ 117, 122-23 (CCPA1976) (four year delay is prima facie unreasonably long); Shindelar v. Holdeman, 628 F.2d 1337, 1343, 207 USPQ 112, 116-117 (CCPA1980) (two year and five months delay not excused by attorney's workload), cert. denied, 451 U.S. 984 (1981).
 
 
 38
 Whether Presto's activities during the twenty-two months between reduction to practice and filing of the patent application established that Presto had not abandoned, suppressed, or concealed the invention was a question of fact. Presto presented evidence of its activities during the period between initial reduction to practice and the filing of the patent application. Mr. Hedrington of Presto testified about numerous engineering and design changes that were made to the initial design during this period. In addition, the parties entered the following stipulation:
 
 
 39
 25. The improvements which were testified to by Mr. Hedrington as being made during the period from November 1986 through April 1988 constitute improvements to the inventions claimed in Claims 1 and 15 of the '718 patent, and are described in the specification of the '755 patent, and the embodiment shown in the drawings of the '755 patent, and are incorporated in the Saladshooter which was shown to Presto customers and purchased by consumers beginning in April 1988.
 
 
 40
 BMI argues that Presto concealed the invention because it admitted that it kept the invention solely within the company while the product development and testing proceeded. BMI argues that this was concealment as a matter of law, because the device was not made public. That is incorrect. The preservation of information within a business during development of a product is not of itself "concealment" in terms of Sec. 102(g). See Checkpoint Systems, Inc. v. United States Int'l Trade Comm'n, No. 94-1295, 1995 WL 298694 (Fed.Cir. May 17, 1995). It is necessary to consider the nature and extent of activity during the period between reduction to practice and the filing of the patent application. See, e.g., Dewey v. Lawton, 347 F.2d 629, 632, 146 USPQ 187, 189-90 (CCPA 1965) ("testing and refinement" for more than one year after reduction to practice was not concealment within the meaning of 35 U.S.C. Sec. 102(g)); Frey v. Wagner, 87 F.2d 212, 215, 32 USPQ 239, 242 (CCPA 1937) ("The law does not punish an inventor for attempting to perfect his process before he gives it to the public."). Cf. Lutzker v. Plet, 843 F.2d 1364, 1367, 6 USPQ2d 1370, 1372 (Fed.Cir.1988) (it is relevant whether the refinements or improvements are reflected in the patent application).
 
 
 41
 Each case must be decided on its particular facts. There was substantial evidence whereby a reasonable jury could have found that the activity during this period established that the invention was not abandoned, suppressed, or concealed. The jury verdict must be sustained.
 
 
 42
 Presto and BMI stipulated that if Presto did not abandon, suppress, or conceal its invention, then claims 1 and 15 of BMI's '718 Patent were invalid. Thus the district court correctly declared these claims invalid.
 
 
 43
 The judgments of the district court, on appeal and cross-appeal, are affirmed.
 
 
 44
 No costs.
 
 
 
 [1]
 National Presto, Inc. v. Black & Decker (U.S.) Inc., No. 89 C 8978, 1992 WL 186245 (N.D.Ill. July 24, 1992)
 
 
 [2]
 Webster's Ninth New Collegiate Dictionary (1981) defines "on," inter alia, as "used as a function word to indicate position in or contact with an outer surface (the fly landed on the ceiling) (I have a cut on my finger)."
 
 
 [3]
 35 U.S.C. Sec. 102. A person shall be entitled to a patent unless--
 * * *
 (g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it....
 
 
 [4]
 Indeed, during the pendency of the district court proceeding Presto provoked an interference at the PTO, by copying the '718 claims into a continuation-in-part of Presto's '755 patent application. The interference proceeding was then stayed by the PTO since the issue was before the district court. Presto had moved this court to stay this appeal and order the PTO to proceed with the interference proceeding. That motion was denied, and has been renewed. We deem it inappropriate to remand for administrative determination of this matter already fully tried in the district court, and now on appeal. The renewed motion is denied